IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| *In re* SUBPOENA DUCES TECUM TO JOSEPH BUNCE | Civil Action Nos.: TDC-19-3084 |
| *In re* SUBPOENA DUCES TECUM TO BRIAN SELWAY | TDC-19-3086 |
| *In re* SUBPOENA DUCES TECUM TO DANIEL SMITH | TDC-19-3081 |
| *In re* SUBPOENA DUCES TECUM TO SCOTT FINN | TDC-19-3083 |
| *In re* SUBPOENA DUCES TECUM TO CHRIS LONG | TDC-19-3082 |
| *In re* SUBPOENA DUCES TECUM TO DARIN RUSH | TDC-19-3087 |
| HISPANIC NATIONAL LAW ENFORCEMENT ASSOCIATION NCR, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No.: TDC-18-3821 |
| PRINCE GEORGE'S COUNTY, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Currently pending before the Court are Motions to Quash Subpoenas and for Protective

Orders Regarding Personal Text Messages, Email, Facebook, and Twitter Records (collectively

1

"Petitioners' Motions").[1] Petitioners are employed as police officers in Prince George's County, Maryland. None are named as parties in the case of *Hispanic National Law Enforcement Association NCR, et al., v. Prince George's County, et al.*, TDC-18- 3821 (the "Underlying Case"). Respondents contend that the conduct of Petitioners is relevant to the Underlying Case.

Petitioners have been served with subpoenas (collectively "the Subpoenas") requiring each to produce "all text messages, emails, posts, tweets, or any other documents that use derogatory language to refer to racial minorities, and Prince George's Police Department officers, or any Prince George's County residents." Petitioners contend the Subpoenas are over broad and seek irrelevant information.

The Court has reviewed Petitioners' Motions, the oppositions thereto, the related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons stated herein, the Court GRANTS Petitioners' Motions to Quash Subpoenas and DENIES Petitioners' Motions for Protective Orders. A separate order shall issue.

**I.    Legal Standards**

Whether something is "discoverable" is discernable by two major principles set forth in the federal rules: 1) "relevancy" to the claims or defenses; and, 2) "proportionality to the needs of the case."

The scope of discovery is set forth in Fed. R. Civ. P. 26(b). *Cook v Howard*, Civ. No. 11-1601, 2012 WL 3634451, at *6 (4th Cir. Aug. 24, 2012). Here, Rule 26(b) grounds the inquiries

---

[1] Petitioners' Motions can be found under the following filings, *In re Subpoena Duces Tecum to Daniel Smith*, Civ. No. TDC-19-3081, ECF No. 1; *In re Subpoena Duces Tecum to Chris Long*, Civ. No. TDC-19-308, ECF No. 1; *In re Subpoena Duces Tecum to Scott Finn*, Civ. No. TDC 19-3082, ECF No. 1; *In re Subpoena Duces Tecum to Joseph Bunce*, Civ. No TDC 19-3084, ECF No. 1; *In re Subpoena Duces Tecum to Brian Selway*, Civ. No. TDC 19-3086, ECF No. 1; and *In re Subpoena Duces Tecum to Darin Rush*, Civ. No. TDC 19-3087, ECF No. 1.

2

of the scope of discovery to the "claims" asserted in the Amended Complaint of the Underlying Case. *See* Am. Compl. (ECF No. 54). Defendants' Answer is found at ECF No. 142.

Pursuant to the federal rules, the Court must quash or modify a subpoena if it "(iii) requires the disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). A subpoena imposes an "undue burden" when it is not limited to the claims and defenses asserted and is therefore over broad. *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008). Additionally, the sought-after discovery must satisfy the proportionality concerns of Rule 26(b) as to whether the burdens of the proposed discovery outweighs its likely benefit.

More affirmatively, Fed. R. Civ. P. 26(c) authorizes the issuance of a protective order to shield others from "annoyance, embarrassment, oppression, or undue burden or expense upon a showing of good cause." It is the moving party that must demonstrate "good cause" by way of specific facts for the issuance of a protective order. *Flanagan v. Wyndham International Inc.*, 231 F.R.D 98, 102 (D.D.C. 2005).

Relevancy is not a very high bar for Respondents to meet. Respondents want to demonstrate that Defendants in the Underlying Case, created and maintained a culture of discriminatory animus throughout the Prince George's County Police Department. Respondents claim this culture was or is violative of various laws which prohibit certain forms of discrimination. Like the *mens rea* requirement of criminal law, much of the law of discrimination requires proof about the state of mind or motivations of the alleged tortfeasors.

In the Underlying Case, Respondents allege there is a pervasive discriminatory culture and actual misconduct by law enforcement officers of sufficient rank and position which is manifested in policies, patterns, and practices long considered unlawful. Respondents are

pursuing discovery of social media and documents within the possession, custody or control of, or created and/or condoned by, officers of rank and influence. It is Respondents' belief this material will reflect disparaging attitudes by leaders of the Prince George's County Police Department and will be relevant or lead to admissible evidence on the subjects of the Amended Complaint.

Respondents erroneously rely upon case law which employs antiquated language from a former version of the federal rules. Respondents quote from *Democratic Nat'l Comm. v. McCord*, 356 F. Supp. 1394 (D.D.C. 1973) to suggest that "relevance need not be 'measured by the precise issues framed by the pleadings, but by the general relevance to the subject matter.'" By way of the 2000 amendments to Fed. R. Civ. P 26(b), it is clear that litigation is to be bounded by the "claims and defenses" of the complaint and/or answer. The scope of discovery is expanded to include "subject matter" concerns only when the Court has found good cause to do so. No such declaration has been announced by the Court in this case.

As it relates to discovery, the Court also must be concerned about proportionality. In doing so, the federal rules direct the Court to consider a non-exhaustive list of factors. Of these, the Court finds the most relevant factor which relates to the present dispute is whether the burden of the proposed discovery outweighs its likely benefit.

**II.     The Burden of the Proposed Discovery Outweighs Its Likely Benefit.**

The Subpoenas seek "all text messages, emails, posts, tweets, or any other documents that use derogatory language to refer to racial minorities, any PGPD officers, or any Prince George's County residents." This request is over broad. Generally speaking, the claims and defenses in this case relate to issues of a discriminatory culture regarding race, color and/or national origin. The discovery here is not tailored to these claims or defenses. While the

4

Subpoenas make reference to "racial minorities," the balance of the information sought by the Subpoenas is not as tailored. By its terms, each subpoena seeks to obtain "derogatory language" about "any PGPD officers" and "any Prince George's County residents." There is no colorable action of discrimination as it relates to PGPD officers or Prince George's County residents generally.

Even more fatal is the attempt to obtain discovery about the use of "derogatory language." While such language may be offensive, it too fails to fall within the scope of discovery. The term "derogatory language" is without shape, scope or direction. Here it includes comments about racial groups, work groups, and a residency group. It provides no hint of whether the language is meant to include or exclude "derogatory" remarks regarding people due to their age or youth, their weight or lack of weight, attractiveness or being less than attractive, whether wealthy or poor, a good law enforcement officer or bad, whether born in one state versus another, or any other classification. This request effectively seeks "derogatory language" about any officer or resident for any reason. The claims asserted are not about "derogatory language" here, there or everywhere. To require Petitioners to produce such information is of no help in determining the claims or defenses in this action. Stray derogatory remarks are of no value in this litigation. Furthermore, requiring Petitioners to produce such unflattering remarks about co-workers and the residents of the county they work for is likely to cause embarrassment to Petitioners in violation of Fed. R. Civ. P. 26(c)(1).

The case law from one of our sister courts in the Fourth Circuit expresses clearly, the Court's obligation here:

> 'A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.' Fed. R. Civ. P. 45(c)(1). A court must quash or modify a subpoena that

> subjects a person to an undue burden. Fed. R. Civ. P.
> 45(c)(3)(A)(iv). When a non-party claims that a subpoena is
> burdensome and oppressive, the non-party must support its claim
> by showing how production would be burdensome. *Vaughan
> Furniture Co. v. Featureline Mfg., Inc.,* 156 F.R.D. 123, 125
> (M.D.N.C.1994). A subpoena imposes an undue burden on a
> party when a subpoena is overbroad. *Theofel,* 359 F.3d at 1071–
> 72.

*In Re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va 2008). Accordingly, the fact that the Subpoenas are over broad equates to creating an undue burden on Petitioners.

These requests not only span the full spectrum of social media, but also include "any other documents" that might yield the requested information.[2] No attempt has been made by Respondents to narrow the period of production for the documents they seek. The requests demand every responsive document from each Petitioner from his or her birth to present. The Amended Complaint, however, makes clear this lawsuit is about the environment in the workplace during the employment of each Respondent and Petitioner.

To add insult to injury, Petitioners wrote to Respondents about this very problem on September 10, 2019 (*See* Civ. No. TDC 19-3082, ECF 12-2). Petitioners sought "further specificity. . . as there is no time period provided or limit to the scope of the request."[3] The Court agrees with the view of Petitioner's counsel when he writes, "I believe it must be paired down to a reasonable and narrow time-frame which is not unduly burdensome. To review every

---

[2] Surprisingly, as least at it relates to Petitioner Bunce, Respondents possess the actual text of the alleged derogatory communication which is reflected in the Amended Complaint. Am. Compl. ¶ 164. To require this Petitioner to "reproduce" the text under the present circumstances flies in the face of Fed. R. Civ. P. 26(b)(2)(C).

[3] The Court is aware that during the most recent "meet and confer" that the parties agreed to modify the time-frame for the requested subpoenas. This modification helps but does not cure the problems.

text message, email, etc. sent and received without regard to a reasonable period of time is substantial and would present an undue burden." *Id*. As the Ninth Circuit has stated, a request for all copies of e-mails sent or received by anyone with no limitation as to the time or scope is over broad and poses an undue burden. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071 (9th Cir. 2004); *see also Sirpal v. Fengrong Wang*, Civ. No. WDQ-12-0365, 2012 WL 2880565, at *5 (D. Md. July 12, 2012).

While the Court has the ability to more narrowly tailor the Subpoenas to a reasonable scope, it declines the invitation to do so here. Respondents do not even attempt to particularize the Subpoenas in light of the differing roles, periods, and alleged misconduct from the six Petitioners. The Court is of the view that Respondents have so greatly "missed the mark" that for the Court to craft appropriate language it would result in the Court unfairly doing so for the benefit of a party. It is one thing buy a suit "off the rack" and ask the Court to tailor it to fit the customer. It is quite another to ask the Court to take the measurements, cut the fabric and then make the suit to fit the customer. Respondents must come far closer to having a reasonable discovery request before this Court will consider making alterations.

Similarly, the Court will refrain from entering a Protective Order on this record. In the event additional over broad subpoenas are brought to the attention of the Court, appropriate remedial steps will be considered.

### III. CONCLUSION

For the reasons set forth above, the Court will GRANT Petitioners' Motion to Quash and DENY Petitioners' Motion for a Protective Order.

March 23, 2020                                            /s/
                                                                             Charles B. Day
                                                                             United States Magistrate Judge