UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)

|  |  |
|---|---|
| **HISPANIC NATIONAL LAW ENFORCEMENT ASSOCIATION NCR**, *et al.*,<br><br>            *Plaintiffs*,<br><br>**v.**<br><br>**PRINCE GEORGE'S COUNTY**, *et al.*,<br><br>            *Defendants*. | Case No. 8:18-cv-03821-TDC |

### MEMORANDUM IN SUPPORT OF
### MOTION OF MOTION TO INTERVENE AND UNSEAL

———————————

NICOLAS Y. RILEY  (Bar No. 810809)*
JONATHAN L. BACKER  (Bar No. 20000)
*Institute for Constitutional Advocacy &*
*    Protection*
*Georgetown University Law Center*
*600 New Jersey Avenue N.W.*
*Washington, DC 20001*
*(202) 662-4048*
*nr537@georgetown.edu*
*jb2845@georgetown.edu*
* Admitted pro hac vice.

Counsel for Proposed Intervenor Prince
    George's County Office of the Public
    Defender

*September 18, 2020*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 3

ARGUMENT .................................................................................................................. 5

I.      The Office of the Public Defender should be permitted to intervene to
challenge the sealing of records filed in this case. ......................................... 5

II.     The public has a First Amendment right of access to the materials filed
under seal. ..................................................................................................... 10

        A.     Records concerning the admission of trial evidence are subject to the
First Amendment right of access. ...................................................... 11

        B.     The County bears the burden of showing that its redactions are
narrowly tailored to serve a compelling interest. .............................. 14

        C.     The County has not satisfied its burden. ............................................ 16

III.    The public has a common-law right of access to the materials filed under
seal. ............................................................................................................... 23

IV.    Any hearing on the County's motion in limine must be held in open court. ......... 28

CONCLUSION .............................................................................................................. 29

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. Holder,*
  673 F.3d 245 (4th Cir. 2011) ................................................................................. 13

*Brady v. Maryland,*
  373 U.S. 83 (1963) ................................................................................. 2, 7, 25

*Burton v. York Cty. Sheriff's Dep't,*
  594 S.E.2d 888 (S.C. Ct. App. 2004) ................................................................. 28

*Butterworth v. Smith,*
  494 U.S. 624 (1990) ......................................................................................... 21

*Chasnoff v. Mokwa,*
  466 S.W.3d 571 (Mo. Ct. App. 2015) ............................................................... 28

*City of Baton Rouge v. Capital City Press,*
  4 So. 3d 807 (La. Ct. App. 2008) ..................................................................... 28

*City of Houston v. Hill,*
  482 U.S. 451 (1987) ......................................................................................... 21

*Columbus-Am. Discovery Grp. v. Atlantic Mut. Ins. Co.,*
  203 F.3d 291 (4th Cir. 2000) .............................................................................. 6

*Company Doe v. Public Citizen,*
  749 F.3d 246 (4th Cir. 2014) ...................................................................*passim*

*Denver Policemen's Protective Ass'n v. Lichtenstein,*
  660 F.2d 432 (10th Cir. 1981) ......................................................................... 27

*Eaglin v. McCall,*
  689 F. App'x 166 (4th Cir. 2017) ..................................................................... 12

*Flynt v. Lombardi,*
  782 F.3d 963 (8th Cir. 2015) .............................................................................. 9

*FTC v. Standard Fin. Mgmt. Corp.,*
  830 F.2d 404 (1st Cir. 1987) ........................................................................... 19

*Gentile v. State Bar of Nevada,*
  501 U.S. 1030 (1991)................................................................................25, 27

*Giglio v. United States,*
  405 U.S. 150 (1972)......................................................................................... 25

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982) ...................................................................................... 1, 17

*Gregory v. City of Vallejo*,
  No. 2:13-cv-00320, 2014 WL 4187365 (E.D. Cal. Aug. 21, 2014) ............................ 17, 19

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004) ................................................................................ 12

*In re Application for an Order Pursuant to 18 U.S.C. § 2703(D)*,
  707 F.3d 283 (4th Cir. 2013) ............................................................................. 11

*In re Associated Press*,
  162 F.3d 503 (7th Cir. 1998) ............................................................................... 6

*In re Knight Pub. Co.*,
  743 F.2d 231 (4th Cir. 1984) ............................................................................... 6

*In re Washington Post Co.*,
  807 F.2d 383 (4th Cir. 1986) .................................................................... 12, 13, 19

*Kamakana v. City & Cty. of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ............................................................................ 18

*Matter of Application & Affidavit for a Search Warrant*,
  923 F.2d 324 (4th Cir. 1991) .............................................................................. 24

*Matter of N.Y. Times Co.*,
  828 F.2d 110 (2d Cir. 1987) ............................................................................... 16

*Metlife, Inc. v. Fin. Stability Oversight Council*,
  865 F.3d 661 (D.C. Cir. 2017) ............................................................................ 22

*Mills v. Alabama*,
  384 U.S. 214 (1966) ........................................................................................ 10

*Monell v. Department of Social Services*,
  436 U.S. 658 (1978) .......................................................................................... 4

*Overbey v. Mayor of Baltimore*,
  930 F.3d 215 (4th Cir. 2019) .............................................................................. 21

*Press-Enterprise Co. v. Superior Court*,
  464 U.S. 501 (1984) ........................................................................................ 29

*Press-Enterprise Co. v. Superior Court*,
  478 U.S. 1 (1986) ........................................................................................... 19

*Roberts v. Mentzer*,
   382 F. App'x 158 (3d Cir. 2010) ............................................................................. 19

*Rushford v. New Yorker Magazine, Inc.*,
   846 F.2d 249 (4th Cir. 1988) ................................................................ 11, 17, 23

*Rutland Herald v. City of Rutland*,
   84 A.3d 821 (Vt. 2013) ............................................................................................ 28

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
   825 F.3d 299 (6th Cir. 2016) ................................................................................ 11, 17

*Sheppard v. Maxwell*,
   384 U.S. 333 (1966) .................................................................................................. 10

*Springs v. Ally Fin. Inc.*,
   684 F. App'x 336 (4th Cir. 2017) ............................................................................ 17

*Stone v. University of Maryland*,
   855 F.2d 178 (4th Cir. 1988) ............................................................... 10, 14, 15, 16

*United States v. Silver*,
   No. 15-cr-93, 2016 WL 1572993 (S.D.N.Y. Apr. 14, 2016) ............................. 13

*Virginia Dep't of State Police v. Washington Post*,
   386 F.3d 567 (4th Cir. 2004) ............................................................................ 14, 18

*Waller v. Georgia*,
   467 U.S. 39 (1984) .................................................................................................... 12

## Statutes

Ala. Code § 36-12-40 ...................................................................................................... 20

Ariz. Rev. Stat. Ann. § 39-123 ...................................................................................... 20

Cal. Penal Code § 832 ..................................................................................................... 20

Fla. Stat. § 119.071 .......................................................................................................... 20

Ga. Code Ann. § 50-18-72 .............................................................................................. 20

Me. Stat. tit. 5, § 7070 .................................................................................................... 20

Minn. Stat. Ann. § 13.43 ................................................................................................ 20

N.D. Cent. Code Ann. § 44-04-18 ................................................................................. 20

Ohio Rev. Code Ann. § 149.43 ...................................................................................... 20

Tenn. Code Ann. § 10-7-503 ................................................................................. 20

Wis. Stat. Ann. § 19 ............................................................................................... 20

**Rules**

D. Md. Local R. 105.11 ..................................................................... 6, 9, 15, 18

**Other Authorities**

Emily Davies & Rachel Chason, *Prince George's County Police Chief Hank Stawinski Resigns*, WASH. POST (Jun. 18, 2020) ............................................................................... 1

Ginia Bellafonte, *Why Secrecy Laws Protecting Bad Officers Are Falling*, N.Y. TIMES (Jun. 5, 2020) .................................................................................. 20

Kate Ryan, *Task Force on Police Reform Announced in Prince George's County*, WTOP (Jul. 3, 2020) ......................................................................................... 7

PGPD General Orders Manual, Vol. I .............................................................. 21, 22

Stephanie Wykstra, *The Fight for Transparency in Police Misconduct, Explained*, VOX (Jun. 16, 2020, 7:30 a.m.) ...................................................................... 20

## INTRODUCTION

The First Amendment and common law protect the public's right of access to judicial proceedings and court records. That right ensures that "the public [may] participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982). Promoting public scrutiny of the judicial process is especially important in cases like this one, which involves allegations of widespread racial discrimination by a major law-enforcement agency.

Defendants in this case have sealed dozens of pages of an expert report filed in response to their motion in limine. In particular, they have redacted descriptions of numerous incidents of abuse and misconduct committed by the Prince George's County Police Department (PGPD). The sealed portions of the report will not only shape the course of this litigation but also have the potential to shape broader public discourse surrounding the County's police force. Indeed, less than twenty-four hours after the public version of the report was filed in this case, the chief of PGPD was forced to resign over its revelations. *See* Emily Davies & Rachel Chason, *Prince George's County Police Chief Hank Stawinski Resigns*, WASH. POST (Jun. 18, 2020), https://perma.cc/4VYE-4AG5. Disclosure of the remaining portions of the report will further contribute to ongoing public discussions about the County's police practices.

The Prince George's County Office of the Public Defender seeks to intervene in this case in order to challenge the redactions to the expert report. As the County's

primary provider of indigent defense services, the Office has a significant interest in learning the extent of any racial bias within PGPD.  Furthermore, the Office has an interest in uncovering the details of the specific incidents of officer misconduct described in the report.  The public version of the report describes numerous incidents of misconduct involving officers who have participated in the investigation, arrest, and prosecution of the Office's clients.  Many of these incidents have never previously been disclosed to the Public Defender's Office, despite prosecutors' obligations to produce such information under *Brady v. Maryland*, 373 U.S. 83 (1963).  Ensuring public access to the full report will therefore shed much needed light on the ways that the misconduct alleged in this case has infected other aspects the County's criminal legal system.

Finally, even setting aside the Office's unique institutional interests in unsealing the report, the Office also shares the broader public's interest in accessing the report to better understand the proceedings in this case.  The Court's ruling on the motion in limine will dictate how many (and which kinds of) misconduct incidents may be introduced at trial—a decision likely to have a profound impact on the resolution of this case.  Disclosing the full report is the only way to ensure that the public can fully understand the basis of the Court's ruling on that motion, as well as the implications of the ruling for the trial itself.

As explained below, Defendants have not identified any compelling reasons for keeping the full report (or the briefing surrounding it) hidden from the public. Accordingly, this Court should order the report unsealed in its entirety.

## BACKGROUND

A group of Black and Latino police officers brought this civil-rights action against Prince George's County and various PGPD officials in 2018.  The officers, joined by a pair of national affinity groups, assert that PGPD discriminates against Black and Latino officers in a variety of ways and retaliates against those who attempt to report their colleagues' racist conduct.  Specifically, the officers contend that PGPD routinely permits white officers to engage in abusive police practices—toward both officers and civilians of color—while penalizing officers of color for complaining about such abuses.  In their complaint, the officers allege violations of Title VII and the Equal Protection Clause, among other claims.

In February 2020, the County filed a motion in limine to exclude certain evidence of officer misconduct at trial.[1]  Specifically, the County asked this Court to issue an order:

(1) restricting Plaintiffs to introducing no more than 20 alleged bad acts that are untethered to Plaintiffs' individual claims into evidence at trial;

(2) requiring Plaintiffs to identify the alleged untethered acts that they will seek to introduce at trial; and

(3) granting Plaintiffs and the County each three additional hours of deposition time and three additional interrogatories and requests for production of documents in connection with each alleged untethered act identified by Plaintiffs.

Defendants' Motion in Limine (ECF No. 134-1), at 1.  The County argued that most of the incidents of racist conduct that Plaintiffs had identified up to that point lacked

---

[1]  For simplicity's sake, this brief refers to all Defendants, collectively, as "the County."

relevance, were "repetitive and cumulative," and rested on "vague and incomplete information." *Id.* at 6–7.

Plaintiffs opposed the County's motion in June 2020. *See* Plaintiffs' Response to Defendants' Motion in Limine (ECF No. 161). They argued that the evidence of so-called "untethered bad acts" (i.e., incidents of racist conduct that did not directly involve the individual Plaintiffs) was relevant for several reasons, including to establish a custom, policy, or practice under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiffs further argued that PGPD's racist conduct toward non-Plaintiff officers and civilians remained probative of the agency's general racial animus (a key element of Plaintiffs' Title VII and equal-protection claims) and served to confer associational standing on the two organizational Plaintiffs.

Plaintiffs also disputed the County's claim that the misconduct allegations were "repetitive and cumulative" and rested on "vague and incomplete information." To that end, they submitted a detailed report prepared by Michael Graham, a nationally known expert in policing practices, documenting various incidents and complaints of racist misconduct committed by PGPD officers and officials. *See* Graham Report (ECF No. 171-1), at 4–6 (summarizing report's findings). The report was based on Graham's review of hundreds of pages of PGPD records—including various policy documents and

officer personnel files—which Plaintiffs submitted as additional exhibits to their response to the motion in limine.  *See* Graham Report (ECF Nos. 171-1, 164, 165, 168).[2]

Pursuant to an earlier agreement with the County, Plaintiffs filed large portions of the Graham report—including almost all of the accompanying materials—under seal, rendering them inaccessible to the public.[3]  Plaintiffs made clear, however, that they believe the report should be unsealed (except for the names of the non-party officers).  *See* Plaintiffs' Reply to Defendants' Objection to Unsealing (ECF No. 197), at 19.  The County, in contrast, has filed multiple briefs objecting to any unsealing of the materials and urging the Court to seal additional material.  *See* Defendants' Objections to Unsealing & Request for Sealing Additional Material (ECF No. 196); Defendants' Supplemental Objections to Unsealing (ECF No. 276).

## ARGUMENT

**I.    The Office of the Public Defender should be permitted to intervene to challenge the sealing of records filed in this case.**

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings."  *Company Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014).  That right "springs from the First Amendment and the common-law tradition that court proceedings are presumptively

---

[2]  For ease of reference, this brief generally refers to all of the exhibits that Plaintiffs submitted along with the expert report as part of the "Graham report."

[3]  A public version of the report, with redactions, is accessible on the public docket for this case.  An earlier public version of the report is also available online at https://perma.cc/44AX-27CY.

open to public scrutiny." *Id.* As the Fourth Circuit has repeatedly noted, ensuring public access to court records "promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary." *Id.* at 266; *see, e.g., Columbus-Am. Discovery Grp. v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case.").

In recognition of these weighty interests, federal courts routinely permit members of the public and the press to intervene in cases to challenge the sealing of judicial records. *See, e.g., Public Citizen,* 749 F.3d at 263 ("[T]he right of access is widely shared among the press and the general public alike, such that anyone who seeks and is denied access to judicial records sustains an injury."); *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984) ("The public was entitled to . . . an opportunity to object to the request [for sealing] before the court made its decision."); *see also* D. Md. Local R. 105.11 (permitting "interested parties" to object to sealing motions). These cases recognize that intervention is "the most appropriate procedural mechanism" for members of the public to vindicate their right to access court records. *In re Associated Press*, 162 F.3d 503, 507 (7th Cir. 1998).

In this case, the Office of the Public Defender (OPD) has a concrete interest in unsealing the Graham report. Besides serving as the primary provider of legal representation to indigent criminal defendants in Prince George's County, OPD routinely engages with local leaders and community stakeholders on matters of police reform and

public safety.  In fact, the head of OPD's Prince George's County office was recently appointed to a local task force whose express goal is "to study and make recommendations on police reform."  *See, e.g.*, Kate Ryan, *Task Force on Police Reform Announced in Prince George's County*, WTOP (Jul. 3, 2020), https://perma.cc/FD6M-3FX7. The Graham report's findings would inform his work on that task force, as well as OPD's broader reform efforts.  Moreover, the liberty of OPD's clients often turns on the integrity of PGPD's investigative practices.  To the extent that those practices are influenced by racial bias—as the Graham report suggests—that bias would have a profound impact on OPD's clients, the majority of whom are people of color.  *See* Declaration of A. Heldreth ¶¶ 2–3.

OPD also has a unique interest in learning the specific details surrounding the various misconduct incidents discussed in the Graham report.  Many of the incidents described in the public version of the report involve officers who have arrested, investigated, or testified against OPD clients.  *See* Heldreth Decl. ¶¶ 4–6.  Although prosecutors are supposed to disclose those types of incidents (which bear on officer credibility) to defense counsel under *Brady v. Maryland*, 373 U.S. 83 (1963), the State's Attorney's Office for Prince George's County routinely fails to share this information with OPD.  *Id.*  Indeed, it was not until the public version of the Graham report was filed in this case that OPD learned—for the first time—of numerous misconduct incidents involving officers who have participated in the prosecution of OPD's clients.  *See infra* Part III (providing examples from the Graham report of previously undisclosed incidents

7

of misconduct involving specific officers who have participated in the arrest, investigation, and prosecution of OPD clients).  The sealed portions of the Graham report likely contain even more examples of such previously undisclosed misconduct.

Given the obvious importance of the Graham report to OPD's work, OPD has a concrete interest in accessing the sealed portions of the report.  Unsealing those portions of the report would enhance and facilitate OPD's advocacy at both an individual and a systemic level and, under Fourth Circuit precedent, that interest provides a sufficient basis for intervention here.  *See Public Citizen*, 749 F.3d at 266 ("Consumer Groups are public interest organizations that advocate directly on the issues to which the underlying litigation and the sealed materials relate.  By seeking, and having been denied access to, documents they allege a right to inspect, Consumer Groups have a direct stake in having a concrete injury redressed.").

OPD's interests in unsealing these records are distinct from those of the parties. Unlike Plaintiffs and the County, OPD seeks to unseal the *entire* report, including the names of all of the officers involved in the misconduct.  Learning the names of those officers is the only way for OPD to determine whether its clients have been—and continue to be—denied access to *Brady* material in cases involving those officers.  *See infra* Part III.  No other party in this case has the same interest in unsealing that information. Thus, OPD cannot rely on those other parties—all of whom, including Plaintiffs, routinely participate in prosecutions of OPD's clients—to vindicate its distinct interests

here.  Nor can OPD rely on those other parties to raise its strongest arguments in favor of unsealing.

Finally, OPD's motion is timely.  OPD filed this motion one week after the County filed its latest brief objecting to any unsealing of the Graham report, consistent with this Court's instructions at the August 19 case management conference.  Moreover, OPD notified the Court and the parties of its intent to intervene on July 24—less than two weeks after the County filed its original objections to unsealing.  Thus, by any metric, the timing of OPD's intervention falls well within the period ordinarily permitted for third parties to object to sealing requests.  *See* D. Md. Local R. 105.11 (permitting interested parties to object to any sealing request within fourteen days); *e.g., Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015) (per curiam) (permitting publisher to intervene for the purposes of unsealing court records a full year after the action was dismissed).  The County cannot reasonably complain that OPD's intervention at this stage will cause it any undue prejudice or delay.  Indeed, discovery and other matters have proceeded unabated in the weeks since OPD first filed its notice of intent to intervene.[4]  And the Court will have to resolve Plaintiffs' (independent) objections to Defendants' sealing efforts anyway.  The County therefore has no reasonable basis to object to OPD's limited-purpose intervention.

---

[4]  OPD's notice of intent to intervene made clear that OPD was prepared and willing to file its motion as early as July 30—a full day *earlier* than the County itself initially planned to file its objections to unsealing.  *See* Defendants' Motion for Extension of Time (ECF No. 191), at 1 (seeking leave to file its objections to unsealing on July 31).

II.    **The public has a First Amendment right of access to the materials filed under seal.**

One of the "major purpose[s]" of the First Amendment is "to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966).  That includes public discourse about judicial proceedings.  Indeed, the Supreme Court has recognized that such discourse "guards against the miscarriage of justice" by subjecting our "judicial processes to extensive public scrutiny and criticism." *Sheppard v. Maxwell*, 384 U.S. 333, 350 (1966).  Consistent with that view, courts have long held that the First Amendment protects the public's right of access to judicial proceedings, including access to "judicial records and documents." *Stone v. University of Maryland*, 855 F.2d 178, 180 (4th Cir. 1988).

To determine whether a given document is subject to the First Amendment right of access, courts typically examine the role that the document plays in the adjudicative process.  Documents that play a critical role in the adjudicative process are generally subject to First Amendment protections and may be sealed only if the sealing is narrowly tailored to serve a compelling government interest.  As explained below, the Graham report (and accompanying exhibits) play a central role in this litigation and, thus, fall squarely within the scope of the First Amendment's right of access.  Unsealing the report would significantly enhance the public's understanding of this dispute, as well as the County's criminal justice system more broadly.  Because the County has not shown that its redactions to the report are narrowly tailored to serve a compelling interest, the report must be unsealed in its entirety.

### A.   Records concerning the admission of trial evidence are subject to the First Amendment right of access.

"For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record.'" *In re Application for an Order Pursuant to 18 U.S.C. § 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (citation omitted). The term "judicial record," in this context, refers to any document filed in court that "play[s] a role in the adjudicative process." *Id.* The Graham report easily meets that definition. Indeed, the reason that the report is currently the focus of a hotly contested motion in limine is because the parties know that it will play not only "a role in the adjudicative process" but, in fact, a *central* role. *Cf. Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 306–09 (6th Cir. 2016) (reversing a district court's order sealing, *inter alia*, a motion to strike an expert report, as well as the report itself, because of the report's significance in the litigation).

The report's centrality to the litigation is also why it is subject to the First Amendment right of access. As the Fourth Circuit has made clear, the First Amendment's access protections generally cover documents that are important to informing the public how a given case may be resolved. Thus, "documents filed in connection with a summary judgment motion" are subject to the right of access because summary judgment often "serves as a substitute for a trial." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252, 253 (4th Cir. 1988). Similarly, "documents filed in connection with plea hearings and sentencing hearings" are subject to the right because such hearings represent "an integral part of a criminal prosecution." *In re Washington Post*

11

*Co.*, 807 F.2d 383, 389, 390 (4th Cir. 1986).  And written voir dire materials are also subject to the right because voir dire represents such an important stage of the trial itself. *See, e.g., Eaglin v. McCall*, 689 F. App'x 166, 168 (4th Cir. 2017) (holding that the First Amendment right "applies to written juror questionnaires").

Most importantly, "a First Amendment access right has been found with respect to hearings concerning the suppression of evidence."  *In re Washington Post Co.*, 807 F.2d at 389; *accord Waller v. Georgia*, 467 U.S. 39, 46 (1984) (explaining that "suppression hearings often are as important as the trial itself " and holding that the Sixth Amendment guarantees public access to such hearings in criminal cases).  The right to attend "hearings concerning the suppression of evidence" necessarily encompasses the right to review judicial records concerning suppression matters.  As the Fourth Circuit has explained, "the First Amendment right of access extends to materials submitted in conjunction with judicial proceedings that themselves would trigger the right to access." *Company Doe v. Public Citizen*, 749 F.3d 246, 267 (4th Cir. 2014); *see also Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004) (explaining that the "public's qualified right of access to judicial documents [i]s derived from or a necessary corollary of the capacity to attend the relevant proceedings").  Accordingly, the briefs and exhibits filed in connection with the County's motion in limine—which explicitly seeks to exclude evidence—fall within the ambit of the First Amendment's access protections.

The fact that the County's motion focuses primarily on the *trial* stage of this litigation provides independent support for applying the First Amendment to the

documents filed in connection with that motion.[5]  After all, the public's right of access is at its apex during trial and, much like jury selection or sentencing hearings, motions-in-limine hearings may be "viewed as within the scope of the . . . trial itself."  *In re Washington Post Co.*, 807 F.2d at 389 (reasoning that the First Amendment applies to "sentencing hearings" because they "arguably fall within the scope of the right of access to criminal *trials*, which is clearly guaranteed" (emphasis in original)).[6]  One of the reasons that "[m]otion in limine practice has 'historically been open to the press and general public'" is precisely because of the tight nexus that exists between motions in limine and trials.  *United States v. Silver*, No. 15-cr-93, 2016 WL 1572993, at *4 (S.D.N.Y. Apr. 14, 2016) (citation omitted).  Thus, by urging the Court to issue a ruling that will govern the conduct of the trial itself, the County has only provided additional reasons for applying the First Amendment to the redacted materials here.

---

[5]  *See, e.g.*, Defendants' Motion in Limine (ECF No. 134-1), at 1 (urging the Court to direct Plaintiffs "to identify the alleged untethered acts that they will seek to introduce at trial"); *id.* at 7 (arguing that the "sheer volume of the alleged [misconduct] incidents . . . could unfairly prejudice the jury at trial"); *id.* at 8 (asking the Court to exercise its "authority to control the length and scope of the trial"); *id.* at 17 (outlining the County's desire "to determine the admissibility of Plaintiffs' alleged untethered acts and to prepare to address them at trial"); *id.* at 22 (asserting the need to "limit the length of the trial"); *see also* Defendants' Reply to Opposition to Motion in Limine (ECCF No. 194), at 15 (arguing in brief heading that exclusion of Plaintiffs' evidence is "necessary to ensure that the County can . . . receive a fair trial").

[6]  Although *In re Washington Post* applied the First Amendment right of access in the criminal-trial context, the Fourth Circuit has since made clear that the right applies equally in the civil-trial context.  *See ACLU v. Holder*, 673 F.3d 245, 252 (4th Cir. 2011) ("[M]ost circuit courts, including the Fourth Circuit, have recognized that the First Amendment right of access extends to civil trials and some civil filings.").

Finally, even if this Court were to hold that documents filed in connection with a

motion in limine are not subject to the First Amendment right of access, that ruling

would only insulate the Graham report from First Amendment scrutiny temporarily.  As

Plaintiffs' counsel stated during the case management conference on August 19, Plaintiffs

intend to file the report in opposition to any summary-judgment motion filed by the

County.  *See* Aug. 19, 2020 Hrg. Tr. at 15 ("[C]ertainly, in opposition to any defense

motion for summary judgment, we would be filing it.").  Once that happens, the Graham

report would immediately become subject to the First Amendment right of access, and

any redactions to the report would have to satisfy strict scrutiny.  *See Public Citizen*, 749

F.3d at 267 ("We have squarely held that the First Amendment right of access attaches to

materials filed in connection with a summary judgment motion.").

### B.    The County bears the burden of showing that its redactions are narrowly tailored to serve a compelling interest.

If a judicial record is subject to the First Amendment right of access, then "access

may be denied only on the basis of a compelling governmental interest, and only if the

denial is narrowly tailored to serve that interest."  *Stone*, 855 F.2d at 180.  "The burden to

overcome a First Amendment right of access rests on the party seeking to restrict access,

and that party must present specific reasons in support of its position."  *Virginia Dep't of

State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004).

The County has not made a serious attempt to satisfy that burden here.  In fact, it

appears entirely unaware that it bears any burden at all to justify its redactions.  The

County's briefs fail to identify (much less apply) the governing legal standard for sealing

14

motions and, at times, seem to suggest that the party *opposing* sealing bears the burden of persuasion.  *See, e.g.*, Defendants' Objections to Unsealing (ECF No. 196), at 3–4 ("Rather than prepare a list of redactions and exhibits for which Plaintiffs actually believe should not be confidential, Plaintiffs challenged the confidential designations of *all* the information in the 130 exhibits filed under seal as well as every redaction in their Response and attached Graham Report.").  In short, the County gets the doctrinal framework exactly backwards.  *Cf. Public Citizen*, 749 F.3d at 272 ("The burden rested with Company Doe to articulate a compelling interest that outweighs the strong presumption of public access."); D. Md. Local R. 105.11 (requiring the party "seeking the sealing" to identify "specific factual representations to justify the sealing").

At the same time, the County also conflates the standard for *admissibility* with the standard for *sealing*.  It suggests, for instance, that certain evidence should be redacted because it is not based on Plaintiffs' "personal knowledge."  *See* Defendants' Objections to Unsealing (ECF No. 196), at 12.  But there is no rule that evidence must be based on personal knowledge in order for it to be publicly accessible.  To the contrary, the default assumption in this country is that *all* court filings will be publicly accessible and that public access to such filings "may be abrogated only in unusual circumstances."  *Stone*, 855 F.2d at 182.  The County's brief reflects a remarkable indifference to that longstanding norm.

15

### C.     The County has not satisfied its burden.

As noted, the County has not identified any specific harms that would result from the unsealing of the Graham report.  Nor has it cited any binding authority to support the sweeping redactions to the report.[7]  Instead, the County bases its entire sealing argument on two sources: (1) a Maryland statute that shields police personnel records from public disclosure; and (2) a protective order requiring the parties to treat certain discovery materials as confidential.  Neither the statute nor the protective order is sufficient to justify the County's redactions to the Graham report.

First, numerous cases recognize that a statute shielding information from the public cannot, on its own, overcome the First Amendment right of access.  *See Matter of N.Y. Times Co.*, 828 F.2d 110, 115 (2d Cir. 1987) ("[W]here a qualified First Amendment right of access exists, it is not enough simply to cite Title III.  Obviously, a statute cannot override a constitutional right."); *e.g.*, *Stone*, 855 F.2d at 181 (holding that a district court erred in failing to consider "whether the right of access nevertheless outweighed the public policy expressed in [a Maryland statute requiring the confidentiality of medical records]").  The reasoning of these cases is obvious: allowing the government to define

---

[7]  The County does not cite a single Supreme Court or Fourth Circuit case in either of its briefs objecting to unsealing.  *See* Defendants' Supplemental Objections to Unsealing (ECF No. 276); Defendants' Objections to Unsealing (ECF No. 196); *see also* Defendants' Interim Sealing Motion (ECF No. 195), at 1–2 (citing zero Supreme Court or Fourth Circuit cases).  Although the County purports to rely on "[b]inding precedent from the United States District Court for the District of Maryland," Defendants' Supplemental Objections to Unsealing (ECF No. 276), at 6, it is hornbook law that district-court decisions do not constitute binding precedent.

the scope of public access to court proceedings would undermine the core purpose of

the right of access, which is to serve as a check on government itself.  *See Globe Newspaper*

*Co. v. Superior Court*, 457 U.S. 596, 604, 610–11 (1982) (explaining that the access right

protects the "free discussion of governmental affairs" and striking down a Massachusetts

statute that barred the public from attending proceedings involving minor sexual-assault

victims).  Neither logic nor precedent supports such a result.

For similar reasons, the County cannot justify its redactions to the Graham report

simply by pointing to an earlier protective order.  The burden to justify a protective order

is distinct from—and lower than—the burden to justify sealing.  *See, e.g., Springs v. Ally*

*Fin. Inc.*, 684 F. App'x 336, 338 (4th Cir. 2017) (holding that "the district court should

have conducted an explicit First Amendment analysis" rather than simply citing a prior

protective order as its justification for sealing a summary-judgment exhibit); *Shane Group*,

825 F.3d at 305 ("[T]he parties and the district court plainly conflated the standards for

entering a protective order under Rule 26 with the vastly more demanding standards for

sealing off judicial records from public view."); *Gregory v. City of Vallejo*, No. 2:13-cv-

00320, 2014 WL 4187365, at *1 (E.D. Cal. Aug. 21, 2014) (denying unopposed motion to

seal police personnel records and rejecting the parties' assertion that "sealing is

appropriate because the parties have entered into a protective order").  In other words,

the "reasons for granting a protective order to facilitate pre-trial discovery may or may

not be sufficient to justify proscribing the First Amendment right of access to judicial

documents." *Rushford*, 846 F.2d at 254.

This case offers a perfect illustration of why courts cannot rely on protective orders to define the scope of public access. As Plaintiffs note, the County initially "designated virtually every document it produced as 'CONFIDENTIAL'" under the protective order. Plaintiffs' Interim Sealing Motion (ECF No. 179), at 2. If that order dictated the terms of public access—as the County claims it should—then it would effectively give the parties carte blanche to seal virtually all of the evidence in this case. Such a result would be absurd.

Even setting aside the lack of authority for the County's position here, its broad reliance on the Maryland statute and the protective order highlights another fundamental shortcoming in its sealing argument: a lack of specificity in its sealing justifications. Although the County's brief alludes to a generalized interest in maintaining the "confidentiality" of police personnel records, it fails to explain how PGPD—or any individual officer—would be harmed by the disclosure of the *specific* material it seeks to redact *in this case*. That failure is fatal to its sealing request under both Fourth Circuit precedent and this Court's local rules. *Virginia Dep't of State Police*, 386 F.3d at 575; D. Md. Local R. 105.11; *see also Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1184 (9th Cir. 2006) ("Simply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden.").

Requiring litigants to provide concrete and specific reasons for sealing records is especially important in cases where the government is a party. *See generally Public Citizen*, 749 F.3d at 271 ("The interest of the public and press in access to civil proceedings is at

its apex when the government is a party to the litigation."); *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987) ("The appropriateness of making court files accessible is accentuated in cases where the government is a party."). And when the government is the party making the sealing request—as in this case—the need for a concrete and specific justification grows stronger still. As the Fourth Circuit has explained, a "blind acceptance by the courts of the government's insistence on the need for secrecy, . . . without a statement of reasons, would impermissibly compromise the independence of the judiciary and open the door to possible abuse." *In re Washington Post Co.*, 807 F.2d at 392. The County's generic justifications for its redactions to the Graham report exacerbate those risks.

More to the point, the County's lack of specificity precludes it from satisfying its burden here. Once again, the County must establish a *compelling* governmental interest to justify its redactions. To satisfy that "rigorous First Amendment standard," *In re Washington Post Co.*, 807 F.2d at 390, the County must do more than merely assert a generalized interest in shielding police personnel records from public view. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion[.]"). As several courts have recognized, there is no per se rule against publicly disclosing police personnel records that concern an officer's on-duty conduct. *See, e.g., Roberts v. Mentzer*, 382 F. App'x 158, 165 (3d Cir. 2010) (rejecting police officers' contention that "employees have a privacy interest in the personnel files maintained by their employers"); *Gregory*, 2014 WL

19

4187365, at *1 (denying unopposed motion to seal police personnel records).  To the contrary, a "police officer's on-the-job activities are matters of legitimate public interest, not private facts." *Coughlin v. Westinghouse Broad. & Cable, Inc.*, 603 F. Supp. 377, 390 (E.D. Pa. 1985), *aff'd*, 780 F.2d 340 (3d Cir. 1985).

Indeed, numerous states and cities currently provide the public with access to law-enforcement personnel records (including disciplinary files) under their respective public-information laws.[8]  The County has not identified any harms that have resulted from the disclosure of those records—and the national trend in favor of disclosing officer-misconduct histories suggests that such harms are non-existent.  *See* Ginia Bellafonte, *Why Secrecy Laws Protecting Bad Officers Are Falling*, N.Y. TIMES (Jun. 5, 2020), https://perma.cc/Z8PU-D2TY.  The experience of these (many) jurisdictions does not, of course, preclude the County from prohibiting public access to its own law-enforcement records.  But it does cast doubt on the strength of the County's stated reasons for sealing all of those records in this case.  Simply put, the County cannot claim that it has a *compelling* interest in sealing *every* PGPD personnel record cited or discussed in

---

[8]  The "majority of states allow public disclosure of at least some officer misconduct records under public records laws."  Stephanie Wykstra, *The Fight for Transparency in Police Misconduct, Explained*, VOX (Jun. 16, 2020, 7:30 a.m.), https://perma.cc/U89A-BBRF.  Indeed, in many states, the default presumption is that police personnel records must be released under state public-information laws (except when the officer is the subject of a pending investigation).  *See, e.g.*, Ala. Code § 36-12-40; Ariz. Rev. Stat. Ann. § 39-123; Cal. Penal Code §§ 832.7–.8; Fla. Stat. § 119.071(2)(k)(1); Ga. Code Ann. § 50-18-72(a)(8); Me. Stat. tit. 5, § 7070(2)(E); Minn. Stat. Ann. § 13.43; N.D. Cent. Code Ann. § 44-04-18; Ohio Rev. Code Ann. § 149.43; Tenn. Code Ann. § 10-7-503(c)(1); Wis. Stat. Ann. §§ 19.35, 19.36(10); *see also infra* note 10 (citing several state-court decisions ordering the disclosure of police-personnel records).

the Graham report when numerous other jurisdictions routinely disclose such records to the public without adverse consequences. *Cf. Butterworth v. Smith*, 494 U.S. 624, 635 (1990) ("While these practices [of other states] are not conclusive as to the constitutionality of Florida's rule, they are probative of the weight to be assigned Florida's asserted interests and the extent to which the prohibition in question is necessary to further them.").

To the extent that the County's sealing argument rests on a fear that disclosure could expose officers to embarrassment or reputational harm, that (speculative) concern cannot justify sealing here. *Cf. Public Citizen*, 749 F.3d at 269 ("We are unaware, however, of any case in which a court has found a company's bare allegation of reputational harm to be a compelling interest sufficient to defeat the public's First Amendment right of access."). The Supreme Court has expressly recognized that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). What's more, restricting the public's access to information "for the very purpose of insulating public officials from unpleasant attacks would plainly undermine [a] core First Amendment principle." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 226 (4th Cir. 2019). The County therefore cannot assert a legitimate interest in shielding officers from public scrutiny.[9]

---

[9]  Insofar as any personnel file contains evidence of misconduct derived from a PGPD computer or from an officer's social-media page, that evidence cannot be treated as private, even under PGPD's own General Orders Manual. The Manual explicitly states that "employees shall have no expectation of privacy" in files maintained on

*Continued on next page.*

Nor can the County reasonably claim that disclosing the records would "have a chilling effect on complaints and candor during internal affairs investigations." Defendants' Supplemental Objections to Unsealing (ECF No. 276), at 4.  Every PGPD officer is required to cooperate with any internal-affairs investigation "by fully and truthfully answering any questions pertaining to the investigation."  PGPD General Orders Manual, Vol. I (at ch. 22, p. 2), https://perma.cc/JJ6P-BLCC.  Thus, PGPD need not rely on promises of confidentiality to ensure such cooperation.  The D.C. Circuit's decision in *Metlife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017), illustrates this point well.  In *Metlife*, a federal agency sought to seal certain judicial records containing information obtained during an investigation of a major financial company.  *Id.* at 662–64.  Like the County, the agency argued that public disclosure of the records would discourage other companies from sharing information with the agency in the future.  *Id.* at 671–72.  But the court flatly rejected that argument, explaining that Congress "grant[ed] the [agency] the power to require companies to turn over the financial information the [agency] needs for its work, regardless of the companies' predilections."  *Id.* at 672.  The County's argument fails for similar reasons.

Moreover, the County's argument that confidentiality is necessary to promote candor during internal-affairs investigations rests on the premise that PGPD conducts those investigations with diligence and integrity.  But one of the Graham report's central

---

PGPD hard drives and "no reasonable expectation of privacy when posting material on social media sites [even when posting anonymously]."  *See* PGPD General Orders Manual, Vol. I (at ch. 5, p. 5 & ch. 34, p. 1), https://perma.cc/JJ6P-BLCC.

22

findings is that PGPD's internal investigations are woefully—and systematically—deficient. *See, e.g.*, Graham Report (ECF No. 271-1), at 4–5 ("There are practices within the Department that result in complaints by civilians and minority officers about racial harassment or discrimination that are not being treated appropriately, in that they are either not investigated, not investigated appropriately, or not disciplined appropriately."). The County's claim that confidentiality protects the reliability of PGPD's internal investigations only underscores the problem with its broader sealing argument.

### III. The public has a common-law right of access to the materials filed under seal.

Unlike the First Amendment right of access, the "common-law presumptive right of access extends to all judicial documents and records," regardless of their centrality to the litigation. *See Company Doe v. Public Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014). The common-law presumption of access "can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" *Id.* at 266 (citation omitted). As with the First Amendment right of access, the common-law right "may be abrogated only in unusual circumstances," *id.* (citation omitted), and the "party seeking to overcome the [access] presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).

The only interest the County has identified to justify its sealing request is its generalized interest in preserving the confidentiality of PGPD personnel files. As explained, the County overstates the significance of that interest and offers no evidence

that the disclosure of the full Graham report will be harmful in any way. *See supra* Part

II.C. At the same time, the County also understates the value that the report's disclosure

would have for the broader public.

For instance, the County fails to acknowledge that disclosing the full Graham

report to the public would enhance public understanding of this case. In particular,

releasing the report would allow the public—for the first time—to meaningfully assess

the validity of the County's arguments in its motion in limine. *See generally Public Citizen*,

749 F.3d at 271 ("[T]he public has a strong interest in monitoring . . . the positions that

its elected officials and government agencies take in litigation."). That motion, as

previously noted, seeks to preclude Plaintiffs from introducing various examples of

officer misconduct on the grounds that they are "repetitive" and rest on "vague and

incomplete information." Defendants' Mot. in Limine (ECF No. 134-1), at 6–7. But the

public cannot assess the merits of that argument without access to the actual misconduct

examples at issue, many of which remain under seal. Furthermore, without that

information, the public will not be able to evaluate this Court's ultimate ruling on the

motion—nor, critically, the implications of that ruling for trial.

Unsealing the Graham report would also benefit the public by promoting greater

transparency within the County's criminal-justice system. The Fourth Circuit has

recognized that "[s]ociety has an understandable interest . . . in law enforcement systems

and how well they work." *Matter of Application & Affidavit for a Search Warrant*, 923 F.2d

324, 331 (4th Cir. 1991). And the Supreme Court has similarly recognized that "[p]ublic

24

awareness and criticism [of the legal system] have even greater importance where . . . they concern allegations of police corruption." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1035 (1991).  The County's redactions to the Graham report undermine those important interests by shielding vast amounts of information concerning alleged misconduct, abuse, and discrimination within PGPD.

Moreover, the redactions stymie the public's ability to assess the impact and extent of local prosecutors' failure to disclose information about PGPD misconduct to defendants, as required under *Brady v. Maryland*, 373 U.S. 83 (1963).  The public version of the Graham report describes several previously undisclosed incidents of misconduct committed by PGPD officers who have participated in the arrest, investigation, or prosecution of OPD's clients.  *See supra* Part I; Declaration of A. Heldreth ¶¶ 4–6.  The report thus raises serious questions about whether the State's Attorney's Office and PGPD are complying with their constitutional obligations to disclose information material to defendants' cases.  *See, e.g.*, *Giglio v. United States*, 405 U.S. 150 (1972).  OPD's recent experience pursuing officer-misconduct information on behalf of its clients hints at the potential breadth of the problem.

For example, OPD recently submitted a discovery request in *State v. Scrivner*, No. CT191241X (Prince George's County Circuit Court), seeking information and records concerning specific PGPD officers involved in the case.  *See* Heldreth Decl. ¶ 6, Ex. A, at 9–15 (requesting, *inter alia*, "any prior instances of misconduct in the police employee's internal affairs files that bear on the credibility of the police department employee,

25

regardless of any formal agency or legal finding.").  In particular, the request sought "any conduct, reports, investigations or materials in the possession of the State's Attorney, Prince George's County Office of Law, Prince George's County Police Department or any agency that reports to the State with regard to Cpl. [Travis] Popielarcheck, Badge #3790 who participated in the investigation of [OPD's client]."  *Id.*, Ex. A, at 10. Although the Graham report states that Corporal Popielarcheck "was the '[s]ubject of complaints for excessive force, and failure to report use of force,'" Graham Report (ECF No. 164), at A.203 (citation omitted), the State's Attorney's Office never produced any records or information related to those complaints, Heldreth Decl., Ex. A, at 16.

OPD submitted a similar discovery request in *State v. White*, No. 4E00669932 (Prince George's County District Court).  Heldreth Decl., Ex. A, at 33.  Maryland's online case-search system identifies PGPD Officer Michael Rushlow as a witness in the case.  *See* Heldreth Decl. ¶ 6.  According to the Graham report, a fellow PGPD officer once accused Officer Rushlow of "discrimination and racial bias"—a charge that ultimately resulted in him being disciplined for "officer discourtesy."  Graham Report (ECF No. 171-1), at 127.  The report further notes that the County's Administrative Hearing Board issued a report on the incident that "detailed numerous [other] conduct violations committed by POFC Rushlow that were not charged."  *Id.*  Although some of those incidents likely fall within the scope of OPD's discovery request, the State's Attorney's Office failed to provide OPD with any information concerning the incidents. *See* Heldreth Decl., Ex. A, at 40.

OPD encountered yet another similar barrier when pursuing discovery concerning PGPD Officer John Wynkoop in *State v. Brooks*, No. 1E00693484 (Prince George's County District Court), a case in which Officer Wynkoop was listed as a witness. OPD requested access to Officer Wynkoop's internal-affairs file based on its informed belief that the file contained information "that would bear on his truthfulness, and his bias towards people of color." Declaration of A. Caldwell, Ex. A, at 7. The Graham report lends credence to those beliefs: it suggests that Officer Wynkoop has been the "[s]ubject of complaints for use of force (fondling a suspect during a search) and for making derogatory comments about Hispanics." Graham Report (ECF No. 164), at A.501. Yet, the State's Attorney's Office never produced Officer Wynkoop's file to OPD. Caldwell Decl. ¶ 3, Ex. A, at 5.

These experiences (and others like them) suggest that the sealed portions of the Graham report likely contain other evidence of officer misconduct that prosecutors have failed to disclose. *See* Heldreth Decl. ¶ 6 (citing other examples). The public's interest in that information is significant. As the Supreme Court has recognized, "[o]ur system grants prosecutors vast discretion at all stages of the criminal process. The public has an interest in its responsible exercise." *Gentile*, 501 U.S. at 1036 (citation omitted); *see also Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 436 (10th Cir. 1981) ("Another compelling state interest in discovery of the [internal-affairs] files is the defendant's right to exculpatory material."). Thus, unsealing the Graham report would meaningfully contribute to public discourse not only about this case, but also about the

27

County's justice system more broadly.  Those interests outweigh the County's abstract interest in maintaining the secrecy of its police personnel records.[10]

## IV. Any hearing on the County's motion in limine must be held in open court.

In addition to protecting the right of access to judicial records, the First Amendment and the common law also protect the right to attend court hearings.  Thus, to the extent that this Court intends to hold a hearing on the County's motion in limine—or any other hearing addressing the exclusion of the Graham report—it cannot restrict the public's access to that hearing absent a compelling justification.  *See Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 510 (1984) ("The presumption of openness may be overcome only by an overriding interest based on findings that [courtroom] closure is essential to preserve higher values and is narrowly tailored to serve that

---

[10] State courts frequently reach the same conclusion when balancing the public's interest in police personnel records against officer privacy interests under state public-information laws.  *See, e.g., Chasnoff v. Mokwa*, 466 S.W.3d 571, 573 (Mo. Ct. App. 2015) ("Because we conclude that the police officers lack a protectable privacy interest in these records of their substantiated on-the-job police misconduct, we affirm the judgment ordering the records' release."); *Rutland Herald v. City of Rutland*, 84 A.3d 821, 825 (Vt. 2013) ("Assuming that the [officers] have some privacy interest at stake, we agree with the trial court that it is heavily outweighed by the public interest in disclosure."); *City of Baton Rouge v. Capital City Press*, 4 So. 3d 807, 821 (La. Ct. App. 2008) (holding that police internal-affairs records must be disclosed because "the public has a strong, legitimate interest in [their] disclosure" and the officers lacked a reasonable expectation of privacy in their on-the-job conduct); *Burton v. York Cty. Sheriff's Dep't*, 594 S.E.2d 888, 895 (S.C. Ct. App. 2004) (holding that law-enforcement personnel records must be disclosed because "the manner in which the employees of the Sheriff's Department prosecute their duties [is] a large and vital public interest that outweighs their desire to remain out of the public eye").

*Continued on next page.*

interest."). As explained above, the public has a significant interest in monitoring and understanding any proceedings related to the County's effort to exclude the Graham report.[11] That interest cannot be taken lightly.

<strong>CONCLUSION</strong>

For the foregoing reasons, the Office of the Public Defender respectfully asks that the Court grant its motion to intervene and unseal all of the briefs and exhibits filed in connection with Defendants' motion in limine.

Respectfully submitted,

Dated:  September 18, 2020

*/s/ Nicolas Y. Riley*
NICOLAS Y. RILEY*
(Bar No. 810809)
JONATHAN L. BACKER
(Bar No. 20000)
*Institute for Constitutional Advocacy &*
*Protection* [12]
*Georgetown University Law Center*
*600 New Jersey Avenue N.W.*
*Washington, DC 20001*
*(202) 662-4048*
*nr537@georgetown.edu*
*jb2845@georgetown.edu*

\* Admitted *pro hac vice*.

*Counsel for Prince George's County Office of the*
*Public Defender*

---

[11]  In the event that the Court holds such a hearing telephonically, it should ensure that members of the public and the press have a means of listening to the hearing.

[12]  Jonathan de Jong, a second-year law student at Georgetown University Law Center, assisted in the preparation of this brief (under the supervision of counsel).

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2020, I electronically filed the foregoing brief with the Clerk of the U.S. District Court for the District of Maryland by using the CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*/s/ Nicolas Y. Riley*

NICOLAS Y. RILEY
*Counsel for Proposed Intervenor Prince George's
County Office of the Public Defender*

## ATTACHMENTS

Transcript of August 19, 2020 Case Management Conference

Declaration of A. Heldreth

Declaration of A. Caldwell

Text of Proposed Order