**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

HISPANIC NATIONAL LAW
ENFORCEMENT ASSOCIATION NCR,
UNITED BLACK POLICE OFFICERS
ASSOCIATION,
MICHAEL ANIS,
MICHAEL BROWN,
THOMAS BOONE,
PAUL MACK,
JOSEPH PEREZ,
TASHA OATIS,
CLARENCE RUCKER,
CHRIS SMITH,
RICHARD TORRES,
SONYA L. ZOLLICOFFER,
PATRICK MCCLAM,
SHARON CHAMBERS and
ADRIAN CRUDUP,

        Plaintiffs,

        v.

PRINCE GEORGE'S COUNTY,
HENRY P. STAWINSKI, III, *individually*,
MARK A. MAGAW, *individually*,
CHRISTOPHER MURTHA, *individually*, and
MAJOR KATHLEEN MILLS, *individually*,

        Defendants.

Civil Action No. TDC-18-3821

**MEMORANDUM OPINION**

Plaintiffs Hispanic National Law Enforcement Association NCR ("HNLEA") and United

Black Police Officers Association ("UBPOA"), along with 13 of their members who are or were

employed by the Prince George's County Police Department ("PGCPD"), have brought this civil

rights action against Prince George's County, Maryland ("the County") and four PGCPD officials

in their individual capacities, alleging discrimination and retaliation against officers of color perpetrated pursuant to County customs and practices of discrimination and retaliation. Pending before the Court are separate Motions to Seal filed by Plaintiffs and Defendants, separate Motions to Unseal Records filed by two sets of Intervenors, and a Motion to Modify the Confidentiality Order filed by Intervenor the State's Attorney's Office for Prince George's County ("the State's Attorney's Office"), all addressing whether briefs and exhibits filed in relation to Defendants' Motion *in Limine* should remain redacted or under seal pursuant to designations that certain material is "Confidential" within the meaning of the parties' Confidentiality Order. The Court held a hearing on all of the Motions on January 29, 2021. For the reasons set forth below, the Motions will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The claims in this case and relevant background information are described in the Court's previous opinions on Defendants' First Motion to Dismiss, *Hispanic Nat'l Law Enf't Ass'n NCR v. Prince George's Cty.*, No. TDC-18-3821, 2019 WL 2929025, at *1-2 (D. Md. July 8, 2019); Defendants' Motion for Partial Dismissal of Plaintiffs' Amended Complaint ("the Second Motion to Dismiss"), *Hispanic Nat'l Law Enf't Ass'n NCR v. Prince George's Cty.*, No. TDC-18-3821, 2020 WL 903205, at *1-2 (D. Md. Feb. 25, 2020); and the Motions to Intervene, *Hispanic Nat'l Law Enf't Ass'n NCR v. Prince George's Cty.*, No. TDC-18-3821, 2021 WL 168458, at *1-2 (D. Md. Jan. 19, 2021), all of which are incorporated herein by reference.

After the Court's resolution of the Second Motion to Dismiss, Defendants filed a Motion *in Limine* requesting that the Court, among other things, issue an order restricting the number of alleged "untethered acts" on which Plaintiffs may rely at trial and requesting that the parties be granted additional interrogatories and document requests related to those untethered acts. Mot. *in*

*Limine* at 1, ECF No. 134-1.  In responding to that motion, Plaintiffs filed several documents with redactions or provisionally under seal, including their brief in opposition to Defendants' Motion *In Limine*; a preliminary report by expert witness Michael Graham, the former Assistant Sheriff for the Los Angeles County Sheriff's Department; a declaration by Plaintiffs' attorney John A. Freedman; and other exhibits.  Plaintiffs later filed an updated expert report by Graham ("the Graham Report").

Among the expert opinions offered in the Graham Report are that PGCPD has customs and practices of (1) not enforcing its policies against race discrimination, harassment based on race, and retaliation; (2) not appropriately investigating and imposing discipline based on complaints by officers of color about race discrimination and harassment; (3) not appropriately investigating and providing discipline for incidents of race discrimination and harassment against civilians; (4) imposing more severe discipline against officers of color than white officers for similar misconduct; (5) retaliating against officers of color who complain about race discrimination, including through retaliatory transfers, baseless charges, and termination; (6) and discriminating against officers of color in the promotion process.  In support of these opinions, Graham includes descriptions of specific incidents he deems illustrative of these customs and practices based on his review of materials produced in discovery, including PGCPD policies, emails among PGCPD personnel, civilian complaints submitted to the PGCPD, equal employment opportunity ("EEO") complaints filed by officers, files of the PGCPD Internal Affairs Division ("IA") relating to investigations of certain incidents, transcripts of depositions taken during this case, and other records.  Plaintiffs attached many of these source documents relied upon by Graham as exhibits to their brief in opposition to the Motion *in Limine*.  Others were attached to subsequent briefs submitted in relation to the motion.

In filing the briefs on the Motion *in Limine*, the Graham Report, and the accompanying exhibits (collectively, "the Sealed Materials") with redactions or under seal, the parties complied with the requirements of a Confidentiality Order agreed to by the parties, which provides that either party may mark a document or portion of a document produced in discovery as "Confidential" if the party, with a good faith basis, believes that it contains "sensitive personal, medical, financial, or disciplinary information." Confidentiality Order at 1-2, ECF No. 72. If a party seeks to include such "Confidential" information in a court filing, it is required provisionally to redact the information or file it under seal, accompanied by an Interim Motion to Seal seeking a court ruling on whether it should remain sealed. *Id.* at 5. In their original Interim Motion to Seal, Plaintiffs stated that while these documents were filed with redactions or under seal in accordance with Defendants' confidentiality designations, they believe that the provisionally sealed information either does not actually disclose information protected by the Confidentiality Order or that it nevertheless should be unsealed based on the general rule that court filings should be made available to the public. Defendants, however, argue that the Sealed Materials, in fact, disclose sensitive employment and disciplinary information of PGCPD personnel and should remain redacted or under seal.

After the filing of the Graham Report, the National Association for the Advancement of Colored People, Prince George's County Branch; the Greater D.C. Chapter of the National Action Network; Community Justice; and the Independent World Television, Inc. (collectively, "the Organizational Intervenors"), filed a Motion to Intervene and Unseal Court Records. The Prince George's County Office of the Public Defender ("the Public Defender's Office") separately filed a Motion to Intervene and Unseal. The Court granted in part both Motions to Intervene in that permissive intervention was granted, with the Motions to Unseal remaining pending. Relatedly,

4

the State's Attorney's Office filed a Motion to Modify the Confidentiality Order, requesting that the order be amended to allow the PGCPD to disclose to the State's Attorney's Office materials covered by that order, including the Graham Report.  The State's Attorney's Office has also filed a Motion to Intervene, which the Court has granted.

## DISCUSSION

Plaintiffs, as well as the Organizational Intervenors, the Public Defender's Office, and the State's Attorney's Office (collectively, "the Intervenors"), all contend that the Sealed Materials may not remain redacted or sealed as they are subject to the public's right of access to judicial records.  In opposing unsealing, Defendants primarily argue that the Sealed Materials are protected from disclosure by the Maryland Public Information Act ("MPIA"), Md. Code Ann., Gen. Provis. § 4-311 (LexisNexis 2019), which protects "personnel records" of Maryland state officials from public release.

## I.     Public Right of Access

The public generally has a right of access to court records because "[p]ublicity of such records . . . is necessary in the long run so that the public can judge the product of the courts in a given case."  *Columbus–America Discovery Grp. v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000).  This right of access derives from two independent sources:  the First Amendment to the United States Constitution and the common law.  *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988).  Because these sources provide different levels of protection to different types of records and documents in a case, a court must first determine the source of the right of access with respect to the documents at issue because "[o]nly then can it accurately weigh the competing interests at stake."  *Id.* at 181.  Regardless of the source of the right, however, "the

public's right of access to judicial records and documents may be abrogated only in unusual circumstances." *Id.* at 182.

A.     **First Amendment**

The First Amendment guarantees the public right of access to certain court proceedings and records.  A court may restrict access to proceedings and filings subject to the First Amendment right "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Id.* at 180.  The burden to overcome the First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position. *See Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 7, 15 (1986) (noting that a proceeding protected by the First Amendment "must be open unless the party seeking to close the hearing advances an overriding interest, and that "the First Amendment right of access cannot be overcome by [a] conclusory assertion").

The First Amendment right of public access, however, "has been extended only to particular judicial records and documents." *Stone*, 855 F.2d at 180.  As the core of the right is the principle that "[t]he right to an open public trial is a shared right of the accused and the public" in order to provide "the assurance of fairness," the First Amendment right attaches to a broad range of criminal proceedings. *Press–Enterprise Co.,* 478 U.S. at 7.  For example, the public and the press have a guaranteed right under the First Amendment to attend criminal trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980).  Where "the taking of a guilty plea serves as a substitute for a trial," and "[s]entencing may also be viewed as within the scope of the criminal trial itself," access to guilty plea and sentencing hearings are treated "in the same manner as a trial for First Amendment purposes." *In re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986). In criminal cases, the First Amendment right also applies to preliminary hearings on whether there

6

is probable cause to proceed to trial and to suppression hearings on whether evidence should be suppressed as obtained by unconstitutional means.  *Id.*

In the civil context, the United States Court of Appeals for the Fourth Circuit has recognized that "the more rigorous First Amendment standard" applies not only to civil trials and the exhibits submitted as evidence in such trials, but also "to documents filed in connection with a summary judgment motion in a civil case," as "summary judgment adjudicates substantive rights and serves as a substitute for a trial."  *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252-53 (4th Cir. 1988).  So although discovery is "ordinarily conducted in private," once documents are made part of a dispositive motion, they lose their status as "raw fruits of discovery" and "stand[] on a wholly different footing" as to the public's access to those records.  *Id.* at 252.  The Fourth Circuit, however, "has never held that the public has a First Amendment right of access to a pretrial hearing on, or records related to, a "non-dispositive civil motion."  *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 580 (4th Cir. 2004) (remanding for consideration whether documents filed with a pretrial discovery motion were subject to the First Amendment public right of access).  Whether proceedings and documents relating to a non-dispositive civil motion are subject to the First Amendment depends on consideration of (1) "historical tradition," focusing on "whether the type of proceeding at issue has traditionally been conducted in an open fashion"; and (2) "the function of public access in serving important public purposes," requiring consideration of whether public access to the proceeding and materials "would tend to operate as a curb on . . . judicial misconduct and would further the public's interest in understanding the . . . justice system."  *In re Wash. Post Co.*, 807 F.2d at 389.  Although the requirement of a public hearing "is not inflexibly applied in all civil proceedings," civil proceedings are "traditionally open," and "in some civil cases the public interest in access . . . may be as strong as, or stronger than, in most criminal cases."

*Va. Dep't of State Police*, 386 F.3d at 580 (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979)).

In arguing that the First Amendment right of public access applies here, Plaintiffs and the Intervenors argue that the Motion *in Limine* in this case is effectively "a dispositive motion to preclude the trier of fact from ever considering the full range of Defendants' discriminatory acts" and thus should be treated similarly to a summary judgment motion.  Pls.' Reply to Mot. Unseal at 1, ECF No. 197.  They also argue that a Motion *in Limine* is part of the trial stage of a case in that it addresses whether certain evidence will be admitted at trial, and that such a motion is comparable to a suppression motion in a criminal case.  Although it is not entirely clear that all documents discussed in motion *in limine* proceedings have historically been docketed and made available to the public, the Court agrees that proceedings on a motion *in limine*, in either a criminal or civil case, are functionally a part of the trial itself in that they resolve critical questions of whether particular pieces of evidence will be admitted at trial.  *See, e.g.*, *United States v. Silver*, No. 15-CR-93 (VEC), 2016 WL 1572993, at *4 (S.D.N.Y. Apr. 14, 2016) (finding that the First Amendment right of access applies to motions *in limine* because such motions are "useful in the judicial process—arguably even essential—because determining the admissibility of evidence is part of the judicial process of a trial"); *Sempowich v. Tactile Sys. Tech.*, *Inc.*, No. 5:18-CV-488-D, 2020 WL 2789792, at *2-4 (E.D.N.C. May 29, 2020) (applying the First Amendment standard to documents filed in support of motions to exclude an expert report and a motion for sanctions or, in the alternative, motion *in limine*).  Public access to such proceedings serves a useful role to facilitate understanding of the determinations made by the justice system in relation to a trial and as a check on misconduct in rulings having a direct impact on the evidence presented at trial.

Here, however, though Defendants labeled their motion as a Motion *in Limine*, the substance of the motion did not specifically seek "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (defining a motion *in limine*).  Rather, the Motion *in Limine* was filed not shortly before trial, but in the midst of discovery, and it sought (1) a general limitation on the number of incidents of discrimination that could be discussed at trial, without seeking exclusion of any particular incident or evidence; (2) disclosure of the specific incidents on which Plaintiffs will offer evidence at trial; and (3) additional interrogatories and depositions to be used to obtain discovery relating to the identified incidents.  While the first request bears indicia of a motion *in limine*, the second and third requests are effectively discovery requests.  Discovery disputes are historically less likely to be resolved in full view of the public, and they are further removed from the trial and thus less likely to require public scrutiny to protect against misconduct.  Where the Court finds that the specific motion at issue is hybrid in nature, it is not prepared to conclude that the documents associated with it are subject to the First Amendment right of access.  *See Va. Dep't of State Police*, 386 F.3d at 576 (stating that the right of access "in any given case may vary depending on the nature of the case and the specific item under review"); *see also Lord Corp. v. S & B Tech. Prods., Inc.*, No. 5:09-CV-205-D, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012) (finding that the common law right of access, not the First Amendment right of access, applied to documents "filed in connection with a motion *in limine* to exclude expert testimony, and not in support of any motions that seek dispositive relief").

**B.      Common Law**

Even if the First Amendment right of access does not apply to the Sealed Material, at a minimum, the common law public right of access is implicated.  Although "[t]he common law

9

does not afford as much substantive protection to the interests of the press and the public as does the First Amendment," it does provide "a presumption of access" to "judicial records." *Rushford*, 846 F.2d at 253.  The scope of the common law right of access is broader than that of the First Amendment protection, as the common law presumption of access attaches to all "judicial records and documents." *Stone,* 855 F.2d at 180; *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).   This presumption applies unless "countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253.  "The party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Id.*   In weighing the "competing interests of the public's access to judicial proceedings and the interests of the individuals in keeping the information private," or of "the government in ensuring integrity in its processes," courts may consider, among other factors, "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Gonzalez v. Cuccinelli*, ___ F.3d ___, No. 19-1435, 2021 WL 127196, at *14 (4th Cir. Jan. 14, 2021) (quoting *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).  In weighing these interests, a court must, as part of its analysis, also "consider alternatives to sealing the documents." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

There is no dispute that the Sealed Materials submitted in relation to the Motion *in Limine* consist of judicial records subject to the common law right of access because they "play[ed] a role in the adjudicative process." *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013).  These documents are therefore presumptively accessible to the public unless Defendants can identify a sufficiently countervailing

interest in favor of sealing them that heavily outweighs the public interests in access.  *See Rushford*, 846 F.2d at 253.

## II.    Public Interests in Access

There are multiple interests that weigh in favor of granting public access to the Graham Report and the other Sealed Materials.  First, there is a general interest, recognized by the common law, in the ability of the public to monitor the "functions of the courts."  *Doe v. Pub. Citizen*, 749 F.3d 246, 271 (4th Cir. 2014).  This interest includes the need to promote the ability of the public to "understand[] the judicial process itself and the bases or explanations for a court's decision." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016) (internal citations omitted).   Here, at issue on the Motion *in Limine* was the question whether Defendants would be able to limit the number of incidents of alleged discrimination that would be the subject of evidence at trial.  The ability to assess whether the Court properly ruled on that motion is dependent in part on an understanding of the nature and breadth of the examples of alleged misconduct that could be referenced at trial.  Notably, it does not matter that the Court denied the Motion *in Limine*, as this interest does not "turn on any particular result" of the proceeding at issue.  *Id.*

Second, beyond this general interest in the public's ability to monitor and understand the judicial process, there is heightened interest in public access to the filings in this case because one of the parties is a government agency, specifically, the PGCPD.   The public interest "in access to civil proceedings is at its apex when the government is a party to the litigation" because "at the core of the interests protected by the right of access" is "the citizen's desire to keep a watchful eye on the workings of public agencies" and in monitoring "the positions that its elected officials and government agencies take in litigation."   *Doe*, 749 F.3d at 271. This interest is even more compelling in the case of a law enforcement agency, because "society has an understandable

11

interest . . . in law enforcement systems and how well they work." *In re Matter of Application and Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991).   The public cannot make well-informed judgments on the propriety of positions taken by the PGCPD in this litigation, particularly its decision to seek exclusion of numerous instances of alleged discrimination, without access to the underlying information on the incidents in question.

Third and most importantly, the Court finds that the public interest is even more compelling in this particular case because of the nature of the claims at issue.  Plaintiffs have alleged multiple instances of race discrimination and retaliation by PGCPD against officers of color, as well as customs and practices of discrimination and retaliation within PGCPD.  "Public awareness and criticism have even greater importance where . . . they concern allegations of police corruption." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1035 (1991) (plurality opinion); *see Overbey v. Mayor and City Council of Balt.*, 930 F.3d 215, 224 (4th Cir. 2019) (holding that "[c]laims of police misconduct" and "the circumstances in which" a police department "litigates and settles such claims" are "public issues" on which individuals have a First Amendment right to engage in uninhibited debate).  Specifically, the Fourth Circuit has stated that the issue of whether there is race discrimination in a law enforcement agency is a "matter of grave public concern." *Cromer v. Brown*, 88 F.3d 1315, 1326 (4th Cir. 1996).  Particularly at a time when there is an intense public focus on the question of whether there is systemic race discrimination within police departments nationwide, there is understandably significant public interest in the present case, as Plaintiffs are effectively alleging systemic racism within the police department serving a majority-minority county of close to one million residents located adjacent to the nation's capital.  As reflected by the participation of the Intervenors, this interest is shared by, among others, media organizations; governmental agencies involved in the criminal justice system; and public interest organizations

focused on civil rights, race discrimination, the criminal justice system, and police reform, including grassroots membership organizations representing individuals who reside in Prince George's County and are served by the PGCPD.  In order for the public to assess whether it agrees with the PGCPD's approach in this case of seeking to limit the presentation of evidence on specific examples of alleged discrimination, and whether it believes more broadly that the present case will result in a fair adjudication of whether PGCPD has discriminated against officers of color and has such systemic customs and practices of discrimination and retaliation, it needs to have substantial access to the information that was at issue during the adjudication of the Motion *in Limine*.

Where the "sealed documents in this case implicate public concerns that are at the core of the interests protected by the right of access," including the public's interest in "keep[ing] a watchful eye on the workings of public agencies," *Doe*, 749 F.3d at 271 (citations omitted), the Court finds that there are significant public interests in the disclosure of the Sealed Materials.

## III.  Interests in Sealing

These strong public interests in disclosure of the disputed records must be "heavily outweigh[ed]" by countervailing interests in order for the Court to permit redaction or sealing of the Sealed Materials.  *Rushford*, 846 F.2d at 253.  Defendants' primary articulated interest in favor of sealing is the privacy interests of individual PGCPD officers named in the records, as reflected in the MPIA.

Under the MPIA, which generally authorizes the public release of certain government records, "a personnel record of an individual, including an application, a performance rating, or scholastic achievement information," is exempt from public disclosure.  Md. Code Ann., Gen. Provis. §§ 4-303, 4-311(a).  The Court of Appeals of Maryland has defined this provision as encompassing records "that directly pertain to employment and an employee's ability to perform

a job." *Kirwan v. The Diamondback*, 721 A.2d 196, 200 (Md. 1998). Such records consist of those "relating to hiring, discipline, promotion, dismissal, or any matter involving an employee's status." *Id.*; *Montgomery Cty. v. Shropshire*, 23 A.3d 205, 215 (Md. 2011). The term "personnel records" should be given its "common sense meaning" and does not include just "*any* record identifying an employee." *Kirwan*, 721 A.2d at 200.

In *Shropshire*, the Maryland Court of Appeals held that "internal affairs records" relating to an investigation of "alleged administrative rules violations by identified police officers in connection with a specific incident" that could result in discipline constitute "personnel records" under the MPIA, even if the investigation does not result in discipline, in part because they contain "significant personal information," such as the officer's "name, date of birth, address, social security number." *Shropshire*, 23 A.3d at 216-17. In so ruling, the court distinguished such records from "documents obtained or created in connection with any complaint of racial profiling," which did not constitute "personnel records" where they were not indexed based on the name of the employee alleged to have engaged in the wrongdoing and they focused on "statistics compiled regarding the acts of a group of officers without identification of their personal information." *Id.* at 217 (citing *Md. Dept of State Police v. NAACP Branches*, 988 A.2d 1075, 1080-81 (Md. Ct. Spec. App. 2010)).

Defendants argue that all of the Sealed Materials fall within the MPIA exemption for "personnel records." Md. Code Ann., Gen. Provis. § 4-311. Although at least some of the records at issue meet this definition, such that there is a specific state interest in maintaining their privacy, invocation of the MPIA is not dispositive on the issue of sealing because this interest is by no means absolute. In *Stone*, the Fourth Circuit held that upon a determination that certain records were covered by a Maryland state statute protecting the confidentiality of medical review

proceedings, the district court erred by sealing the records without first determining "whether the right of access nevertheless outweighed the public policy expressed" in the state law. *Stone*, 855 F.2d at 181. *Cf. In re the Matter of the New York Times Co.*, 828 F.2d 110, 115-16 (2d Cir. 1987) (stating that in assessing whether materials relating to a federal wiretap must be disclosed under the First Amendment, "it is not enough simply to cite" the federal wiretap statute, as the court must engage in "balancing" of the competing interests). In the context of the personnel records of police officers, the Court must also consider that "privacy interest[s] in nondisclosure of professional records should be especially limited in view of the role played by the police officer as a public servant who must be accountable to public review." *Martin v. Conner*, 287 F.R.D. 348, 354 (D. Md. 2012). Thus, the Court must both determine whether the Sealed Materials are covered by the MPIA and also weigh the privacy interests underlying that statute against the public interests in access. Otherwise, states would be able to enact statutes limiting the scope of public access to federal court proceedings and thereby unilaterally thwart the public's common law right of access.

The only other interest in non-disclosure identified by Defendants is a general concern that the release of IA records would have "a chilling effect on complaints and candor during internal affairs investigations." Opp'n Mot. Unseal at 3, ECF No. 196. Maryland courts have recognized that there is a public interest in "preserving the confidentiality of internal police investigations" in order to "promot[e] cooperation by civil witnesses and police officers." *Shropshire*, 23 A.3d at 216. Again, however, this interest does not necessarily outweigh the need for disclosure, because "there is also a countervailing 'significant public interest' in transparency of government and accountability of public servants and the unimpeded search for the truth, especially where abuses of police power are alleged." *See Martin*, 287 F.R.D. at 355 (ordering the production of certain documents in discovery in a civil rights case alleging an illegal search and seizure in part because

there was "no evidence" provided to show that there would be a chilling effect on either police or citizen candor during internal affairs investigations).

All of the interests in favor of and against disclosure must factor into "a court's balancing equation in determining what portions of motion papers in question should remain sealed or should be redacted." *In re the Matter of the New York Times Co.*, 828 F.2d at 116.  Upon consideration of the Sealed Materials, the Court finds that there are several different categories of materials for which this balancing is applied differently.  The Court therefore applies this analysis for three separate categories of the Sealed Materials:  (1) non-personnel records; (2) IA records relating to incidents specifically discussed and attributed to an identified officer in the Amended Complaint; and (3) IA records relating to other incidents.

## IV.    Non-Personnel Records

The first category consists of records that fall outside of the MPIA exemption because they do not constitute "personnel records" under that statute.  Md. Code Ann., Gen. Provis. § 4-311.  Within this category are four subcategories of information.   First, in the Graham Report, there are descriptions of aggregated statistics and statistical analyses compiled and conducted by Graham. For example, for certain IA investigators, Graham calculated the percentage of complaints against white officers that the IA investigator sustained, as well as the percentage of complaints against officers of color that the same IA investigator sustained, to illustrate that certain IA investigators sustained complaints against officers of color at a substantially higher rate.  Defendants seek to redact the names of the IA investigators.  Even if drawn in part from IA files, such information does not constitute "personnel records" under the MPIA because it consists of a synthesis of existing information that does not discuss possible discipline of specific officers.  *See Shropshire*, 23 A.3d at 217 (distinguishing records compiled in order to obtain statistical information relating

to complaints of racial profiling from records providing information on the hiring, discipline, promotion or dismissal of specific employees).  Indeed, in the example provided, the information proposed for sealing relates to the identity of the IA investigators, against whom no discipline was ever contemplated, not the officers who were the subject of those investigations.  These and other similar statistical compilations are therefore not personnel records under the MPIA.

Second, a significant portion of the Sealed Materials consists of information from sources other than personnel files or IA investigative files, such as state court records, public news articles, social media postings, emails and other communications sent to and from PGCPD officers, responses to interrogatories, and deposition testimony generated in this case.  Some of these materials actually are, or derive from, publicly available sources, and many have not been specifically shown to be contained in a personnel file or IA file.  Indeed, many describe incidents that resulted in no formal investigation.  Where Defendants have not established that these documents were contained in a formal personnel file or IA investigative file, they do not meet the definition of a "personnel record" and are not protected from disclosure by the MPIA.

Defendants argue that these and other records proposed for sealing nevertheless constitute "personnel records" by defining the term to include not only the contents of traditional personnel files and IA files relating to investigations of identified officers for specific incidents of misconduct, but also, in essence, any document that refers to any conduct by an officer that could be construed negatively, because such conduct, at least theoretically, could result in discipline. The Court rejects this overly expansive definition.  It is inconsistent with the holding of the Maryland Court of Appeals that the term "personnel records" should be given its "common sense meaning" and does not include just "*any* record identifying an employee."  *Kirwan*, 721 A.2d at 200 (holding that campus parking tickets issued to the University of Maryland men's basketball

coach were not "personnel records" under the MPIA).  Moreover, if a record describes an incident that resulted in no IA investigation, as many of the records at issue do, it cannot fairly be deemed to be a record relating to "discipline" of an officer.  Further, because emails, social media postings, and other records that were not created as part of an IA investigation were thus not generated with any particular understanding relating to confidentiality, they should not be deemed to fall within the presumptively private category of "personnel records."  Thus, for purposes of the Sealed Material, the Court finds that absent a particularized showing relating to a specific document, the only documents that qualify as "personnel records" under the MPIA are those that can be shown to be contained within a formal personnel file or an IA investigation file relating to a specific investigation of an identified officer for misconduct that could lead to discipline.  *See Shropshire*, 23 A.3d at 218.  No such particularized showings have been made.

Third, there are records relating to EEO complaints and charges of discrimination by Plaintiffs and other officers of color, as well as civilian complaints about discrimination, that do not constitute "personnel records" under the MPIA.  To the extent that EEO complaints are associated with any particular officer, they are associated with the complaining officer, not the alleged perpetrator of discrimination.  An EEO complaint does not necessarily identify a specific perpetrator, and there is no evidence that PGCPD indexes or files such complaints in any file relating to the alleged perpetrator.  *Shropshire*, 23 A.3d at 217 (noting that complaints about racial profiling were not "personnel records" under the MPIA in part because they were not indexed based on the alleged offending officer).  Moreover, where the purpose of an EEO complaint and investigation is to assess whether an employee alleging discrimination is entitled to some form of redress from the employer, whether monetary or injunctive in nature, the EEO process does not inherently relate to the "hiring, discipline, promotion, [or] dismissal" of an allegedly offending

officer.  *Kirwan*, 721 A.2d at 200.  Indeed, the Graham Report references certain EEO complaints and civilian complaints specifically because, as Graham asserts, EEO complaints rarely result in any investigation, much less one aimed at considering possible discipline against offending officers, and some civilian complaints are never referred to IA or investigated at all.  Graham Rep. at 41-42, 51-55, 77-85, ECF No. 272-1.  Thus, the Court finds that EEO and civilian complaints are not necessarily personnel records and would qualify as such only if there is specific evidence that the records were placed in the file of an IA investigation actually conducted for the specific purpose of assessing whether discipline should be imposed against an identified officer.  Where Defendants have made no such showing, the MPIA does not apply to EEO and civilian complaints.  Finally, even if an EEO complaint were shown to have been actually copied and placed in an IA investigative file, where EEOC charges of discrimination and related EEO documents are routinely filed in this Court without sealing, the Court finds that the EEO complaints must still be disclosed because any privacy interest arising from the MPIA is outweighed by the public interests in access to the information discussed above.  *See supra* part II.

Fourth, there are records from the files of actual IA investigations that are unconnected to any alleged offender.  For example, the Graham Report references, and certain exhibits relate to, a February 2017 incident in which certain Plaintiffs complained about the vandalization of a sign on a locker referencing the PGCPD "Color Guard" so that it read "African-American Guard," ostensibly because many of the members of the Color Guard were African American.  Am. Compl. ¶ 61(i), ECF No. 54.  Other parts of the Sealed Materials relate to an incident in which a picture of an African American face and an Afro wig were placed on a training dummy used to practice baton strikes.  Even though IA investigations were opened and IA files were created in response these incidents, no officer was named as the subject of these investigations, and no suspects were ever

identified.  Under these circumstances, documents from these and any other similar IA files cannot constitute "personnel records" under the MPIA because they do not relate in any way to an identifiable employee who was even potentially subject to discipline.

In summary, all of the records discussed above do not constitute "personnel records" under the MPIA absent a showing that they were part of a personnel file or IA investigation file focused on potential discipline for an identified officer.  Thus, the MPIA exemption on public disclosure of personnel records cannot serve as a sufficient countervailing interest to outweigh the public interests in access to these records.  Where Defendants have not otherwise offered another interest in maintaining the privacy of non-IA records, the Court finds that Defendants have not met their burden of showing that that the common law right of access should be overridden as to these documents, and it will not seal or redact these materials.  *Rushford*, 846 F.2d at 253.

The Court further finds that to the extent that any document found in a personnel or IA investigative file also exists in a location independent of those files, either because it was originally generated outside of the IA investigative process or has been allowed to be distributed beyond the confidentiality protections associated with personnel files or IA files, the privacy interest in that document has now diminished to the point that it does not heavily outweigh the interests in public access.  *Cf. Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976) (holding that under the federal Freedom of Information Act, "nonconfidential matter" is "not to be insulated from disclosure merely because it was stored by an agency in its 'personnel' files").

Finally, the Court finds that even if any of these documents could be deemed to constitute personnel records under the MPIA, the Court would nevertheless decline to seal them because for the reasons discussed above, the privacy interests associated with the documents are sufficiently

attenuated that they do not heavily outweigh the strong public interests in access to records relating to this case generally and the Motion *in Limine* specifically. *See supra* part II.

## V.    IA Records

The remaining Sealed Materials consist of information and records exclusively contained in IA files relating to investigations of identified officers for possible discipline.  This information can be divided into two categories, consisting of information relating to incidents specifically referenced in Plaintiffs' Amended Complaint for which the officer at issue was identified, and information relating to other incidents.

### A.    Incidents and Officers Referenced in the Complaint

The Amended Complaint refers to multiple incidents in which specific officers allegedly engaged in race discrimination or racially motivated harassment.  It also refers to multiple incidents in which named Plaintiffs or other specific officers of color were investigated for alleged misconduct, and in which specific white officers allegedly engaged in similar misconduct that Plaintiffs have argued was subject to no or insufficient discipline, reflecting disparate treatment based on race.  These incidents include, but are not limited to, incidents involving Lieutenants Scott Finn, Lisa Segar, Patrick Hampson; Sergeants Chris Nalesnik, Kerry Jernigan, Brian Selway, Daniel Smith, Joseph Bunce, Jeremy Bull, and Chad Miller; Corporals Steven Jones and Beau Jarvis; and Officers Michael Rushlow, Thomas Denault, Darrin Rush, George Merkel, Glen Caradori, Tiffany Johnson, and Kristen Baird.  The allegations in the Amended Complaint in many instances describe the PGCPD's action or non-action against the officer as a result of the incident and the current employment status of the officer.

Because these incidents form the core of Plaintiffs' allegations against Defendants, the public interest in the facts underlying these incidents is heightened.  Indeed, because one of

Plaintiffs' primary allegations is that there is a custom and practice of disparate discipline, information relating to the investigations, or lack of investigations, into these incidents is at the heart of this case.  Thus, there is a strong public interest in access to the Sealed Materials relating to these incidents in order to understand the position taken by the PGCPD, a government agency, in seeking to limit the scope of the evidence to be presented a trial, to evaluate the Court's ruling on the Motion *in Limine*, and more broadly to understand the serious allegations of race discrimination at the PGCPD, an issue of substantial public concern.  At the same time, although records from the IA investigations relating to these incidents are ordinarily protected from disclosure by the MPIA, at this point, the privacy interests are reduced because the identity of the specific officers and certain key facts relating to the incidents have already been publicly disclosed through the pleadings in this case, and these incidents will inevitably form a part of the factual evaluation of the case, whether through summary judgment motions or at trial. Although Defendants have referenced the potential chilling effect of the release of information from IA investigation files, they have provided no specific evidence that such an impact would occur at PGCPD.  *See Martin*, 287 F.R.D. at 355-56.

Thus, upon consideration of the factors to be considered in determining whether to seal records in contravention of the common law right of access, the Court finds that there are legitimate and proper purposes for the release of this information, as it would "enhance the public's understanding" of the events underlying this case, and "the public already has access" to some portion of the information.  *See Gonzalez*, 2021 WL 127196, at *14; *In re Knight Pub. Co.*, 743 F.2d at 235.  Accordingly, when the privacy interests are balanced against the importance of permitting citizens to "keep a watchful eye on the workings of public agencies," *Doe*, 749 F.3d at 271, particularly in a case involving allegations of race discrimination in a police department

22

which are of "grave public concern," *Cromer*, 88 F.3d at 1326, the Court finds that Defendants have not demonstrated sufficiently compelling privacy interests that heavily outweigh the common law presumption of access and the specific public interests in access to this particular information. *Rushford*, 846 F.2d at 253; *see also Martin*, 287 F.R.D. at 354 (stating that "police officers vested with great power must necessarily sacrifice some of their privacy regarding the exercise of that great power when they choose to pursue a career as a law enforcement officer accountable to the public"). Therefore, the IA investigative records relating to specific incidents involving named officers that were described in the Amended Complaint will be fully disclosed without redactions. *See Martin*, 287 F.R.D. at 357 (noting that "[d]espite disfavor of the production of confidential records in Maryland, there is notably no absolute bar against disclosure under Maryland law").

## B.  Other Incidents

The final category of Sealed Materials consists of information and documents contained in formal personnel files or IA investigative files that relate to incidents of alleged PGCPD officer misconduct for which the incident and officer are not both identified in the Amended Complaint. These incidents, many of which were characterized in the Motion *in Limine* as "untethered acts," have been referenced by Plaintiffs and Graham as additional examples illustrating a custom and practice of discrimination and retaliation at PGCPD, including practices of failing to properly investigate claims of discrimination and imposing disparate discipline based on race.

For the same reasons applicable to the IA investigation materials relating to the incidents referenced in the Amended Complaint, the Court finds that there is a substantial public interest in access to this information.  Where Defendants sought to exclude evidence of the vast majority of these incidents by requesting a specific limit on the number of incidents of discrimination or retaliation that could be addressed at trial, the public has a specific interest in access to the

documentation of these incidents to evaluate the PGCPD's position that such incidents need not be considered, to assess the Court's ruling on the Motion *in Limine*, and to gain an understanding of Plaintiffs' claims that there are sufficient examples of this activity to establish the alleged customs and practices, all of which relate to issues of significant public interest and concern. *See supra* part II.

For this category, however, the Court weighs the competing interests differently. First, at least at the present time, the public interest in access to information on incidents in this category is less significant than for information on incidents specifically referenced in the Amended Complaint. Even with the Court's denial of the Motion *in Limine*, it is not at all certain that any specific incident in this category will actually be the subject of evidence on a motion for summary judgment or at trial. During the litigation on the Motion *in Limine*, Plaintiffs disavowed the notion that they would seek to present evidence on all of these incidents, and since the Motion was decided, Plaintiffs have been, at the Court's direction, considering which specific incidents to actually present at trial. Where some of these incidents may never become the subject of a specific presentation at trial, there is less of a need for the public to have immediate access. Moreover, where the significance of these incidents lies primarily in their numerosity and similarity to illustrate the scope of the alleged discriminatory customs and practices at PGCPD, rather than in the specific identity of each person involved, the public interest in the identity of the specific officers in question is reduced.

Second, the privacy interests grounded in the MPIA are more significant for this category because the specific names of the officers involved or implicated in the incidents have not yet been disclosed publicly, and they may never need to be disclosed if these incidents do not become the subject of an evidentiary presentation.

Balancing these interests, the Court finds that there remains a substantial public interest in disclosure of the facts relating to the incidents in order to allow the public to evaluate the Court's ruling on the Motion *in Limine*, particularly whether the scope of the alleged customs and practices that are the subject of Plaintiffs' claims was broad enough to justify the Court's denial of the Motion *in Limine*.  It finds, however, that at this point in the case, the privacy interests in the identity of the officers involved in these incidents substantially outweigh the need for disclosure of their names because such release is not essential to satisfy the primary purposes of the public's need for access in evaluating the ruling on the Motion *in Limine*, and even to understand the nature of the alleged discrimination at PGCPD.  The Court will therefore unseal these Sealed Materials to allow public access to the facts underlying the described incidents, but it will order redaction of the names of the officers investigated, as well as the names of the victims and witnesses referenced in the IA files.  *In re Knight Publishing Co.*, 743 F.2d at 235 (noting that even when there is basis to protect records from disclosure, courts must still consider whether there are "alternatives to sealing the documents").  The ranks of the officers referenced will not be redacted, nor will the names of IA investigators and PGCPD supervisory officials who reviewed the investigations and made decisions on discipline.

Notably, by ordering the redaction of the names of the officers, as well as of the victims and witnesses whose identities may indirectly identify the officer, these IA records will no longer constitute "personnel records" within the meaning of the MPIA.  *Md. Dep't of State Police v. Md. State Conference of NAACP Branches*, 59 A.3d 1037, 1046 (Md. 2013) (holding that once the names of law enforcement officers, complainants, and identifying information are redacted from IA files, they no longer constitute personnel "record[s] of an individual" protected by the MPIA); *see also Johnson v. Balt. City Police Dep't*, No. ELH-12-cv-2519, 2013 WL 497868, at *5 (D.

Md. Feb. 7, 2013) ("[T]he [interest] in confidentiality of an unredacted personnel record of an individual . . . abates once any individually identifying information has been redacted from the record in question.").  For these incidents, as opposed to those specifically referenced in the Amended Complaint, their relevance to this case generally is not based on the identity of the specific officer involved, so the origin of the records would not remain "obvious" after redaction.  *See Glass v. Anne Arundel Cty.,* 160 A.3d 658, 682-83 (Md. 2017) (holding that an IA file with the name of the investigated officer redacted remained a "personnel record" under the MPIA where "the origin of the records" would still be "obvious" based on the "history of the IA complaints and litigation," and where the file was to be produced in response to a request targeted to obtain the IA file of a specific officer and incident).

To the extent that any of these files reference named Plaintiffs, those individuals may consent to the release of their own names.  If any of this information is offered with motions for summary judgment or at trial, when the First Amendment right of access would undisputedly apply, the degree of public disclosure may be revisited.

## VI.    Criminal Discovery

The Public Defender's Office and the State's Attorney's Office (collectively, "the State Intervenors") separately argue that the full, unredacted Graham Report should be disclosed so as to facilitate both offices' ability to satisfy their obligations in state criminal cases, specifically the production and receipt of exculpatory evidence or impeachment material pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).  In particular, prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police" and produce it to the defense.  *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).  The State Intervenors correctly assert that because the

Graham Report contains multiple accounts of PGCPD officers allegedly engaging in race discrimination, harassment, and other forms of misconduct motivated by race, it may contain, or at least may facilitate the discovery of, *Brady* or *Giglio* material, such as impeachment evidence that may show bias on the part of a specific officer who may be a testifying witness in a state criminal case.

As discussed above, the Court will unseal the Sealed Materials with the exception of maintaining the redactions of the names of officers, victims, and witnesses contained within certain IA investigative files unconnected to specific incidents with identified officers that are described in the Amended Complaint. Thus, as to the State Intervenors' request, the Court need only consider whether the State Intervenors have provided a basis for the release of those names. Although the Court recognizes that the release of the Graham Report without redactions may facilitate the State Intervenors' ability to meet their criminal discovery obligations, which advances an important public interest, it concludes that advancing that interest is not an appropriate basis upon which to order such public disclosure.

First, the public interest in access to the judicial records in this case is primarily to advance the public's awareness and understanding of the Court's rulings in this case generally and on the Motion *in Limine* specifically. It also extends to providing the public an understanding of the validity of the claims in this case—particularly the claims that PGCPD has customs and practices of discrimination and retaliation—which implicate areas of significant public concern. If the public interest in access to the records of this case extends to uncovering possible *Brady* and *Giglio* material in state criminal cases, it does so in only the most attenuated of ways. The need to fulfill state criminal obligations is more properly satisfied through the standard procedures in state criminal cases, including requests between the Public Defender's Office and the State's Attorney's

Office and, if necessary, requests to the state court for orders compelling disclosure. Particularly where the State's Attorney's Office acknowledges that, for purposes of criminal discovery, it is deemed by law to be in possession of all records in the custody of the PGCPD, Reply Mot. Modify at 4, 8, ECF No. 334 (citing *Robinson v. State*, 730 A.2d 181, 192-93 (Md. 1999)), there has been no showing that such standard procedures cannot be used to satisfy criminal discovery obligations. Moreover, where disclosure of *Brady* and *Giglio* material within a criminal case is typically made only among counsel in the first instance, public release of the names in question would go well beyond the level of disclosure justified by *Brady* and *Giglio* obligations. Accordingly, the Court declines to unredact the names at issue based on the interest identified by the State Intervenors. That interest is more properly addressed through requests to the PGCPD to disclose the redacted material to the State's Attorney's Office to facilitate criminal discovery obligations, and, if necessary, litigation in state court criminal cases to seek such information if it is otherwise unattainable.

Lastly, the Court addresses the State's Attorney's Office's argument that the Confidentiality Order, the language of which was jointly proposed by the parties, must be modified because the PGCPD has cited it as a basis to refuse to produce the Graham Report to the State's Attorney's Office. If the PGCPD, in fact, has represented to the State's Attorney's Office or a state court that this Court has barred release of the Graham Report to the State's Attorney's Office for use in meeting discovery obligations in state criminal cases, it would be a gross mischaracterization of this Court's order. Although the language of the Confidentiality Order, read hypertechnically, could be construed as barring disclosure of any designated confidential information, including the redacted parts of the Graham Report, to the State's Attorney's Office because it is not a party to this case, the PGCPD fails to appreciate that the designation of the

Sealed Material as "Confidential" lies entirely within its own control.  Under the terms of the Confidentiality Order, it is the PGCPD, not the Court, that designates material as "Confidential" in the first instance.  Confidentiality Order ¶ 1(a).  At any point, the PGCPD could modify its confidentiality designations, including those relating to content referenced in the Graham Report, to allow for disclosure to the State's Attorney's Office.  To claim that it is the federal court, and not the PGCPD, that stands in the way of the State's Attorney's Office's ability to receive the Graham Report and fulfill its criminal discovery obligations is wrong and arguably disingenuous.

Nevertheless, to provide clarification that is apparently necessary, the Court will grant the State's Attorney's Office's Motion in part to include in the Order resolving all of these Motions a statement that neither the Confidentiality Order nor any other order of this Court precludes the PGCPD from releasing any information that it originally designated as "Confidential," including but not limited to the unredacted contents of the Graham Report, to the State's Attorney's Office for use in fulfilling criminal discovery obligations or other needs relating to the investigation and prosecution of state criminal cases.  Accordingly, if the State's Attorney's Office requests the redacted portions of the Graham Report and other Sealed Materials for such a purpose, or if a state court orders such a release, there is absolutely no basis upon which PGCPD could claim that this Court is preventing compliance.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Interim Motion to Seal, ECF No. 179, Defendants' Interim Motion to Seal, ECF No. 195, and Plaintiffs' Interim Motion to Seal, ECF No. 199, as well as the Organizational Intervenors' and the Public Defender's Office's Motions to Unseal Records, ECF Nos. 282, 283, all will be GRANTED IN PART and DENIED IN PART.  The Graham Report and the briefs and exhibits filed in relation to the Motion *in Limine* will be unsealed and unredacted

in their entirety, including the names of individuals referenced, except that (1) individuals' personal identification and contact information, such as addresses, phone numbers, email addresses, dates of birth, and social security numbers, will be redacted; and (2) as to incidents other than those specifically discussed and attributed to an identified officer in the Amended Complaint, for documents and information available only from IA investigative files relating to specific investigations of identified officers for the purpose of considering discipline, the names (but not the ranks) of the officers under investigation, the victims, and the witnesses will be redacted.  The State's Attorney's Office's Motion to Modify the Confidentiality Order, ECF No. 305, will be GRANTED IN PART and DENIED IN PART, in that the Court will clarify and order that neither the Confidentiality Order nor any other order of this Court precludes the PGCPD from releasing any information it originally designated in this case as "Confidential," including but not limited to the unredacted contents of the Graham Report and related exhibits, to the State's Attorney's Office for use in fulfilling criminal discovery obligations or other needs relating to the investigation and prosecution of state criminal cases.  The Motion will otherwise be denied.  A separate Order shall issue.

Date:  February 10, 2021                              /s/ *Theodore D. Chuang*
                                                     THEODORE D. CHUANG
                                                     United States District Judge