UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

HISPANIC NATIONAL LAW
ENFORCEMENT ASSOCIATION NCR,
*et al.*,

    Plaintiffs,

v.

PRINCE GEORGE'S COUNTY, *et al.*,

    Defendants.

Civil Action No. TDC-18-3821

**MEMORANDUM OPINION**

In 2018, Plaintiffs Hispanic National Law Enforcement Association NCR ("HNLEA"), United Black Police Officers Association, and multiple current or former officers of the Prince George's County Police Department ("PGCPD"), filed this civil rights action against Defendants Prince George's County, Maryland ("the County") and four PGCPD officials in their individual capacities, alleging systemic discrimination and retaliation against Black and Hispanic officers, including through a hostile work environment, discriminatory discipline, and discrimination in promotions, perpetrated pursuant to County customs and practices. On July 16, 2021, after almost three years of litigation, the parties entered into a settlement agreement resolving all claims, and the Court conditionally dismissed the action, retaining jurisdiction only to enforce the provisions of the settlement agreement and to enforce and implement the terms of the Court's April 21, 2021 Order resolving Plaintiffs' Motion for a Preliminary Injunction. *See* ECF Nos. 567, 568.

The Fraternal Order of Police, Prince George's Lodge No. 89 ("the FOP"), has since filed a Motion to Intervene seeking to intervene as of right, or in the alternative, seeking permissive

intervention, for the purpose of protecting its interests and the interests of its members in the PGCPD promotion process. ECF No. 580. The Motion is fully briefed, and the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

The claims in this case and relevant background information are described in the Court's previous opinions on Defendants' Motion to Dismiss, *Hisp. Nat'l Law Enf't Ass'n NCR v. Prince George's Cnty.* ("*HNLEA I*"), No. TDC-18-3821, 2019 WL 2929025, at *1–2 (D. Md. July 8, 2019); Defendants' Motion for Partial Dismissal of Plaintiffs' Amended Complaint, *Hisp. Nat'l Law Enf't Ass'n NCR v. Prince George's Cnty.* ("*HNLEA II*"), No. TDC-18-3821, 2020 WL 903205, at *1–2 (D. Md. Feb. 25, 2020); two previous Motions to Intervene, *Hisp. Nat'l Law Enf't Ass'n NCR v. Prince George's Cnty.* ("*HNLEA III*"), No. TDC-18-3821, 2021 WL 168458, at *1–2 (D. Md. Jan. 19, 2021); the Motions to Seal, *Hisp. Nat'l Law Enf't Ass'n NCR v. Prince George's Cnty.* ("*HNLEA IV*"), No. TDC-18-3821, 2021 WL 488641, at *1–2 (D. Md. Feb. 10, 2021); and Plaintiffs' Motion for a Preliminary Injunction, *Hisp. Nat'l Law Enf't Ass'n NCR v. Prince George's Cnty.* ("*HNLEA V*"), 535 F. Supp. 3d 393, 397–409 (D. Md. 2021), all of which are incorporated herein by reference.

### I. The Preliminary Injunction

As relevant to the pending Motion, Plaintiffs filed a Motion for a Preliminary Injunction on January 11, 2021, seeking to enjoin the administration of the next scheduled PGCPD promotion tests in April 2021 based on the assertion that the County "instituted and maintained a set of policies which discriminate against Black and Hispanic officers in promotions," including that it had "knowingly employed a system of promotional tests" that "resulted in the consistent,

2

significant over-promotion of white officers at the expense of Black and Hispanic officers." Mot. Prelim. Inj. at 1, ECF No. 395-1. Plaintiffs also requested suspension of further administration of promotion tests until the County could replace the promotion system with one that reduces or eliminates the discriminatory effects. Defendants opposed the Motion. The FOP did not seek to intervene at that time.

At the time of the Motion for a Preliminary Injunction, the PGCPD promotion process included written multiple choice tests for promotion to Police Officer First Class ("POFC") and Corporal, which were administered twice a year, in April and October. There was a separate a process for promotion to the positions of Sergeant, Lieutenant, and Captain (the "competitive promotion cycle"), which was conducted every two years starting in April of even-numbered years, consisted of a written multiple choice test followed by a skills assessment, and resulted in the generation of rank-ordered promotion eligibility lists for each position from which candidates were selected to fill openings that came available in the subsequent time period ending 60 days before the next scheduled competitive promotion cycle was to begin. For the April 2020 competitive promotion cycle, because of postponements due to the COVID-19 pandemic, the written tests were administered in September 2020 and the skills assessments were given in April 2021. The next competitive promotion cycle was scheduled to begin in April 2022.

The Court held a hearing on the Motion for a Preliminary Injunction on March 26, 2021. On April 21, 2021, the Court declined to enjoin the April 2021 promotion tests but granted the motion in part and issued an order ("the Preliminary Injunction Order") providing that:

1. Defendants . . . are ENJOINED from the continued use of the existing PGCPD promotion system after the completion of the 2020 competitive promotion cycle for promotions to Sergeant, Lieutenant, and Captain, as set forth below, and the completion of promotions to Police Officer First Class ("POFC") and Corporal based on the April 2021 promotion tests.

3

2. An independent expert, selected with the agreement of the parties, shall be appointed to review the components of the PGCPD promotion system—including but not limited to the written tests, the skills assessments, and the selection processes—and to recommend changes to reduce or eliminate adverse impact and discrimination against Black and Hispanic officers.

3. PGCPD shall revise the components of the PGCPD promotion system, including by adopting all reasonable recommendations of the independent expert, and use the revised promotion system in (1) the October 2021 promotions to POFC and Corporal; and (2) a competitive promotion cycle for promotions to Sergeant, Lieutenant, and Captain, to begin in October 2021, six months earlier than usual.

4. Any use of the 2020 competitive promotion eligibility lists generated under the existing promotion system from tests and assessments conducted in September 2020 and April 2021 shall end 60 days before the start of the October 2021 competitive promotion cycle.

Prelim. Inj. Order ¶¶ 1–4, ECF No. 505. As part of the rationale for requiring the next promotion cycle to begin in October 2021, the Court cited "the harm that a delay of another full year would cause to those Plaintiffs seeking competitive promotions." *HNLEA V*, 535 F. Supp. 3d at 431.

On May 5, 2021, pursuant to the Preliminary Injunction Order, the parties filed a joint request for the appointment of Siena Consulting as the independent expert, which the Court granted on May 11, 2021.

## II. The Settlement Agreement

On July 20, 2021, the parties informed the Court that they had reached a settlement-in-principle that would resolve all claims in the litigation. On July 30, 2021, the Parties filed the complete Settlement Agreement, which had an effective date of July 27, 2021. Regarding the promotion system, the Settlement Agreement states that:

> The County agrees to abide by the Court's April 21, 2021 Order (ECF 505), including the provisions enjoining use of the existing promotions system. The County further agrees to adopt and implement reasonable promotional system changes of the PGPD recommended by Siena Consulting fashioned to reduce or eliminate adverse impact and discrimination against Black and Hispanic officers.

4

Settlement Agreement at 4, ECF No. 566-1.

On August 11, 2021, Plaintiffs filed a Motion for Conditional Dismissal Due to Settlement pursuant to Federal Rule of Civil Procedure 41(a)(2) and requested that the Court retain jurisdiction to resolve any disputes arising under the Settlement Agreement. In the absence of opposition from the County, the Court granted the conditional dismissal that same day.

On September 9, 2021, Plaintiffs submitted to the Court Siena Consulting's recommendations for reforming the promotion process. On the issue of the competitive promotion cycle to begin in October 2021, Plaintiffs stated that the process would begin that month with the review of candidates for Captain, Lieutenant, and Sergeant for time-in-grade and good standing. In place of the prior two-step process of a multiple choice test followed several months later by a skills assessment, there would be a single, interactive assessment to be conducted in December 2021 or January 2022, with new promotion lists to be issued in January and February 2022.

On September 13, 2021, the FOP filed a Notice of Intent to File a Motion to Intervene. That same day, the County submitted a letter requesting confirmation that the schedule proposed by Siena Consulting would comply with the terms of the Preliminary Injunction Order and seeking clarification on whether the Preliminary Injunction Order required the retirement of the prior promotion lists as of August 31, 2021—60 days before the start of the new October 2021 promotion cycle—even though the assessments under the new process would not occur before the end of October 2021. ECF No. 571. After a Case Management Conference on September 20, 2021 at which the Court confirmed that the prior promotion eligibility lists expired on August 31, 2021 pursuant to the terms of the Preliminary Injunction Order, the FOP filed its Motion to Intervene on October 21, 2021.

## DISCUSSION

In their Motion, the FOP seeks intervention as of right pursuant to Federal Rule of Civil Procedure 24(a) or, in the alternative, permissive intervention under Rule 24(b). The FOP argues that the requirement of the Preliminary Injunction Order, adopted by the Settlement Agreement, that the use of the 2020 promotion eligibility lists had to expire on August 31, 2021, was "at tension" with its collective bargaining agreement with the County ("the CBA") in that it expired more than 60 days before the promotion assessments were to be given as part of the next competitive promotion cycle. Mot. Intervene at 4, ECF No. 580. If permitted to intervene, the FOP will request that the Court permit the use of the 2020 promotion eligibility lists to fill vacancies occurring between August 31, 2021 and February 23, 2022, the date on which the lists would have expired if the Court had not ordered that the next competitive promotion cycle begin in October 2021 rather than April 2022. Defendants do not oppose the Motion. Plaintiffs contend that the Motion should be denied because it is untimely and does not meet the requirements for intervention under either prong of Rule 24.

### I. Legal Standards

A party may intervene as of right when it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The United States Court of Appeals for the Fourth Circuit has interpreted this language to require a party seeking to intervene as of right to meet four requirements: the intervenor must (1) submit a timely motion to intervene; (2) demonstrate a "direct and substantial interest" in the property or transaction at issue; (3) prove that the interest would be impaired if intervention was not allowed; and (4) establish that the interest

is inadequately represented by existing parties. *Richman v. First Woman's Bank*, 104 F.3d 654, 659 (4th Cir. 1997).

Permissive intervention may be allowed "on timely motion" to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion under Rule 24(b), the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). A decision to grant or deny permissive intervention otherwise lies within the sound discretion of the trial court. *Smith v. Pennington*, 352 F.3d 884, 892 (4th Cir. 2003) (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982)).

## II. Timeliness

Whether a party is seeking to intervene under either Rule 24(a) or 24(b), the motion must be timely. *See Alt v. U.S. Env't Prot. Agency*, 758 F.3d 588, 591 (4th Cir. 2014). The question of timeliness "is committed to the sound discretion of the trial court," and "a court's discretion in this regard is 'wide.'" *Id.* In making this determination, a district court must consider three factors: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Id.*

As to the first factor, the purpose of the timeliness requirement of intervention is to prevent a late intervenor from "derailing a lawsuit within sight of the terminal." *Scardelletti v. Debarr*, 265 F.3d 195, 202 (4th Cir. 2001) *rev'd on other grounds*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This case has progressed about as far as it can—the case was settled by the parties, was dismissed, and is subject to the Court's jurisdiction only for enforcement of the Settlement Agreement. In *Alt*, the Fourth Circuit upheld the denial of a motion to intervene as untimely when it was filed at "a relatively advanced stage" of litigation—after a motion to dismiss had been denied and

summary judgment briefing had commenced—because the district court was "reasonably reluctant to arrest the momentum of the lawsuit so near to its final resolution." *Id.* at 591. In *Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989), the Fourth Circuit affirmed the denial of a motion to intervene as untimely because it was filed after two years of "extensive litigation and settlement negotiations" and three and a half months after a settlement proposal was presented to the court. *Id.* at 286. Here, Plaintiffs filed this case on December 12, 2018, and over the past three years, the Court has resolved two Motions to Dismiss and two Motions to Intervene filed by other parties, and the parties conducted extensive discovery for over two years. After the Court resolved the Motion for a Preliminary Injunction, the parties engaged in settlement negotiations and resolved the case in July 2021. Where the FOP did not move to intervene throughout this protracted litigation and waited until two months after the settlement was reached, this factor weighs heavily against timeliness. *See Gould*, 883 F.2d at 286.

Notably, "the point to which [a] suit has progressed is ... not solely dispositive," as "[t]imeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 365–66 (1973). "[T]he most important circumstance relating to timeliness" is whether the intervening party seeks to intervene "as soon as it became clear" that its interests "would no longer be protected by the parties in the case." *Cameron v. EMW Women's Surgical Center, P.S.C.*, 142 S. Ct. 1002, 1012 (2022). Addressing the third factor, the reason for the tardiness of the motion, the FOP argues that its Motion was not untimely because it did not learn that the changes to the promotion system could impact its rights under the CBA until Plaintiffs' September 9, 2021 filing describing Siena Consulting's recommendations, which included maintaining the early termination of the 2020 promotion eligibility lists on August 31, 2021 even though the newly formulated promotion assessments for the competitive ranks of Captain, Lieutenant, and Sergeant

would not be administered until December 2021 or later. The FOP also raises concerns about the possibility that Siena Consulting would suggest a deviation from the "Rule of One," under which the first officer on the promotion eligibility list must be promoted. Mot. Intervene at 4 n.1. According to the FOP, these changes would arguably be inconsistent with its rights under the CBA.

The FOP omits most of the relevant timeline. At multiple points prior to September 9, 2021, the filings in this case made it abundantly clear that the FOP's interests in the existing promotion system were at stake in this litigation and were not adequately protected by the parties in this case. When Plaintiffs filed the Motion for a Preliminary Injunction on January 11, 2021, it specifically requested an order barring PGCPD "from administering its promotional policies and discriminatory tests" until the "promotional policies and testing programs" could be replaced with alternatives that "reduce[d] and eliminate[d] discriminatory effects" and complied with "EEOC and professional standards." Mot. Prelim. Inj. at 1, ECF No. 395. It is undisputed that the FOP's counsel, having entered an appearance in November 2019 for another purpose, received all relevant filings after that date. Although the County opposed that motion and attached an affidavit from an FOP official in support of certain points, it did not include any argument relating to the need for the promotion tests and policies to be maintained and conducted on the historically-followed schedule in order to comply with the CBA. Indeed, the FOP has acknowledged that the affidavit from the FOP official did not constitute an argument relating to the FOP's contractual rights. At that point, the FOP was on notice that the promotion system and schedule in which it has asserted a vested interest was potentially subject to significant changes through this litigation, and that its specific interests were not being asserted by any party in the case.

Then, when the Court ruled on the Motion for a Preliminary Injunction on April 21, 2021, it specifically ordered that the existing PGCPD promotion system, including the competitive

9

process for promotion to Sergeant, Lieutenant, and Captain, would be enjoined; that the system would be revised; and that "all reasonable recommendations" of the independent expert to be appointed would be adopted. Prelim. Inj. Order ¶¶ 1, 3. It also ordered that the next competitive promotion cycle would begin in October 2021, "six months earlier than usual," and that "any use of the 2020 competitive promotion eligibility lists generated under the existing promotion system . . . shall end 60 days before the start of the October 2021 competitive promotion cycle." *Id.* ¶¶ 3–4. At that point, it was patently clear that the both the timelines and processes for promotions were about to change in significant ways. Particularly where the Court's order did not specifically require adherence to any past timelines or processes which were arguably mandated by the CBA, the FOP's presently asserted interests were clearly at issue in the litigation but were not being advanced by any party. The FOP's argument that it did not understand that the Preliminary Injunction Order required the use of the 2020 promotion eligibility lists to terminate 60 days before October 2021 even if no formal promotion tests or assessments were administered that month is unpersuasive where the plain language of the Preliminary Injunction Order provided that those lists would expire 60 days before the start of the October 2021 "promotion cycle," without any reference to test dates. *Id.* ¶ 4. Since the FOP asserts that it has an interest in ensuring a specific time period between the expiration of the promotion eligibility lists and the conduct of any promotion assessments, it needed to intervene at that point. Moreover, where the Preliminary Injunction Order required the adoption of "all reasonable recommendations" of the independent expert to be appointed, without any requirement of adherence to the CBA or consideration of the FOP's interests, the FOP cannot plausibly argue that it did not need to intervene if it wanted the Court to consider and protect those interests. *Id.* ¶ 3.

10

Third, at the absolute latest, the FOP was plainly aware of the impact on its interests when the Settlement Agreement was filed in July 2021. At that point, not only had both Plaintiffs and the County voluntarily agreed to abide by the terms of the Preliminary Injunction Order going forward, but they both agreed to abide by the reasonable recommendations of Siena Consulting on modifications to the promotion process, without any requirement to comply with the CBA generally or with any specific practice allegedly required by the CBA. Yet during the time period before the Court approved the Settlement Agreement, the FOP did not seek to intervene even in the face of a Settlement Agreement that plainly did not protect or even address its presently stated interests.

As this history illustrates, the FOP cannot reasonably claim that it believed that its interests were adequately represented by the County throughout the litigation relating to the promotion system, because at each key juncture during the litigation and settlement of Plaintiffs' claims relating to that system, the County failed to advance the FOP's specific interests. More broadly, in its Motion, the FOP has acknowledged that "neither the Plaintiffs nor the County share FOP 89's interest in maintaining and enforcing certain aspects of the collectively bargained process for promotional testing" in part because "[a]lthough FOP 89 and the County bargain collectively in good faith, as union and employer, they are in an adversarial relationship." Mot. Intervene at 17. The FOP also asserts that "[a]lthough the County must comply with its obligations under the law and its CBA, FOP 89 understands that the County often adheres to the CBA reluctantly, and may see this litigation as an opportunity to avoid or limit its contractual obligations." *Id.* The FOP's reasoning on why the County cannot be relied upon to represent its interests was equally applicable at all times throughout this case, including at all times since the filing of the Motion for a Preliminary Injunction. Where the FOP was on notice through these events that its interests were

11

being litigated but were not adequately represented by the parties, its request to intervene a month after the Court approved the Settlement Agreement was unjustifiably late.

As for the remaining factor, the prejudice to the other parties weighs strongly against timeliness. In the Motion, the FOP asserts that if permitted to intervene, it will seek to reinstate the 2020 promotion eligibility lists for the ranks of Sergeant, Lieutenant, and Captain for use in filling vacancies arising up to February 23, 2022—the date they would have expired absent the Preliminary Injunction Order and the Settlement Agreement. Contrary to the FOP's claim, this request does not relate to an "ancillary issue." *Id.* at 10. This request directly undermines the gains that Plaintiffs achieved through the Motion for a Preliminary Injunction. In resolving that motion, the Court, having found a likelihood of success on the merits of Plaintiffs' claim of discrimination in the promotion system, concluded that it was necessary to shorten the time period for using those lists to reduce the impact of the existing promotion policy "because with each promotion cycle in which white officers are promoted and [Black and Hispanic officers] are not, they will not obtain the salary increases and higher level experience that would come with promotions, and they will fall behind in attaining eligibility for promotion to higher levels." *See HNLEA V*, 535 F. Supp. 3d at 429. To grant the FOP's request would also substantially prejudice the parties because it would undo a key provision of the Settlement Agreement that ended previously intractable litigation between Plaintiffs and the County involving multiple forms of discrimination at PGCPD extending well beyond the promotion system. Significantly, the request that the FOP will make if permitted to intervene would extend beyond the Court's current, limited jurisdiction over this case to enforce the Settlement Agreement. By asking the Court to extend the use of the 2020 promotion eligibility lists, the FOP would be asking the Court not to enforce the Settlement Agreement, but to alter a material provision of both the Preliminary Injunction Order

and the Settlement Agreement and to reopen litigation over a previously resolved core issue in this case. Thus, intervention would be highly prejudicial to the parties. Where all three factors weigh against the FOP, the Court finds that the Motion is untimely.

The Court's ruling is consistent with the holding of the United States Court of Appeals for the Seventh Circuit in *Illinois v. City of Chicago*, 912 F.3d 989 (7th Cir. 2019), in which a motion to intervene was denied under substantially similar circumstances. In *City of Chicago*, the Fraternal Order of Police, Lodge No. 7 ("the Lodge") sought to intervene in a lawsuit filed by the State of Illinois against the City of Chicago alleging that the Chicago Police Department's use-of-force policies and practices violated the United States Constitution and Illinois law. *Id.* at 981–82. Though the Lodge publicly opposed any possible consent decree as soon as the complaint was filed, citing concerns that it would impair its CBA, the Lodge did not initially move to intervene in part because while it was monitoring the case during months-long negotiations over a consent decree, it had informal discussions with the State in which it received assurances that the State would not intrude into matters of officer discipline and would work "to avoid any impact on CBA rights." *Id.* at 982. When the Lodge sought to intervene nine months into the negotiations and argued that the need to do so had only recently become apparent when it was shut out of the settlement negotiations and a collection of community groups published a report making recommendations for a consent decree that would require "substantive modifications" to practices covered by the CBA, the district court denied the motion as untimely, finding that the Lodge should have known of its interest in the suit from the time the suit was filed. *Id.* at 983–84. In affirming that ruling, the Seventh Circuit rejected the argument that the Lodge did not know that its interests could be adversely affected until it became clear that the State was not protecting its interests, because the "conclusion that the City, State, and Lodge do not share interests is hardly

remarkable," and the Lodge's "very existence is rooted in the competing interests between its members and the City." *Id.* at 985. The court held that where "the intervenor has known all along that its interests are directly pitted against" the interests of the parties, it cannot wait until there is an unexpected outcome to intervene. *Id.* at 986.

As with the Lodge, the FOP's existence is rooted in competing interests between its members and the County, and its argument that its need to intervene arose only after it identified a specific issue on which its interests were diametrically opposed to that of the parties is unconvincing. *See* Mot. Intervene at 17–18. Once Plaintiffs sought a preliminary injunction targeting the promotion system, the FOP had reason to know that its interests in the promotion process arising from its CBA rights could be adversely affected. Then, based on the terms of the Preliminary Injunction Order and the Settlement Agreement, it knew that its interests were being impacted and that the County was not adequately representing them. Throughout those events, the decisions of both the Court and the parties were premised on the landscape before it, to which the FOP had made no effort to contribute. Because the FOP waited until after all of those decisions were made—and after the case had settled—to seek to intervene in this case, its Motion to Intervene is untimely and will be denied as to both intervention as of right and permissive intervention. *See Alt*, 758 F.3d at 591. Accordingly, the Court need not consider the other requirements for intervention as of right or permissive intervention.

Although the Court will deny the Motion to Intervene, it recognizes that while a review of the CBA, submitted with the Motion, does not reveal a direct conflict between any specific provision of the CBA and the Settlement Agreement, the FOP may have legitimate concerns that the changes to the promotion system pursuant to the Settlement Agreement could impact its rights under the CBA. The Court's orders in this case, including on this Motion, are not intended to limit

the rights of the FOP under the CBA or to prevent the FOP from securing remedies for any violations of the CBA that are consistent with those orders. However, to the extent that the FOP believes that the County's actions pursuant to the Settlement Agreement are inconsistent with the CBA, the proper means by which to allege and resolve such a claim is the grievance resolution process set forth in the CBA itself. *See* CBA art. 20, Carpenter Aff. Ex. A, ECF No. 580-1.

## CONCLUSION

For the foregoing reasons, the FOP's Motion to Intervene, ECF No. 580, will be DENIED. A separate Order shall issue.

Date:   March 30, 2022

                                                     THEODORE D. CHUANG
                                                    United States District Judge